# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| NST GLOBAL, LLC, d/b/a SB TACTICAL | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:19-CV-00121-CFC |
| vs. | ) ) | JURY TRIAL DEMANDED |
| SIG SAUER, INC. | ) ) | |
| Defendant. | ) ) ) | |

## OPENING BRIEF IN SUPPORT OF DEFENDANT SIG SAUER, INC.'S MOTION FOR TRANSFER TO THE DISTRICT OF NEW HAMPSHIRE

Dated: March 27, 2019

Helena C. Rychlicki (DE No. 3996)
PINCKNEY, WEIDINGER, URBAN
& JOYCE LLC
3711 Kennett Pike, Suite 210
Greenville, DE 19807
Tel: (302) 504-1497
Fax: (302) 442-7046

Laura L. Carroll (admitted *pro hac vice*)
Eric G. J. Kaviar (admitted *pro hac vice*)
Anthony E. Faillaci (admitted *pro hac vice*)
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110-1624
Tel: (617) 345-3000
Fax: (617) 345-3299

*Attorneys for Defendant SIG Sauer, Inc.*

# TABLE OF CONTENTS

I.     NATURE AND STAGE OF THE PROCEEDINGS ............................................1

II.    ISSUE TO BE RULED UPON AND STANDARD OF REVIEW........................1

      A.     Issue Presented............................................................................1

      B.     Standard For A Transfer Analysis Under § 1404(a)....................1

III.   SUMMARY OF THE ARGUMENT ......................................................2

IV.   FACTUAL BACKGROUND...................................................................4

V.    ARGUMENT AND AUTHORITIES.......................................................7

      A.     SB Tactical Could Have Filed Suit In The District Of New Hampshire .....7

      B.     The *Jumara* Factors Strongly Favor Transfer.............................8

          1.     The Six Private Factors Favor Transfer ...........................8

               a.     SB Tactical's Choice Of Forum Minimally Weighs Against Transfer As SB Tactical Lacks A Presence In This District........................................................8

               b.     SIG Sauer's Preference For New Hampshire Weighs In Favor Of Transfer ............................12

               c.     The Claims Arose And Should Be Resolved In New Hampshire. .......................................12

               d.     The Convenience Of The Parties Favors Transfer.............13

               e.     The Convenience Of Witnesses That Might Otherwise Be Unavailable For Trial Favors New Hampshire ..................16

               f.     New Hampshire Is The Location Of Each Parties' Relevant Evidence..........................................17

          2.     The Public Factors Each Either Favor Transfer Or Are Neutral ...18

               a.     The Practical Considerations That Could Make A Trial Easy, Expeditious, Or Inexpensive Favor Transfer. ..........18

               b.     The District Of New Hampshire Is Less Burdened. ..........18

               c.     New Hampshire Has An Interest In Resolving A Dispute Between Two New Hampshire Companies Which Arose In New Hampshire. .............................................19

VI.   CONCLUSION.....................................................................................19

# TABLE OF AUTHORITIES

Page(s)

Cases

*Deere & Co. v. AGCO Corp.*, Civ. Act. No. 18-827-CFC,
2018 WL 140886 (D. Del. Jan. 9, 2019)................................................................ 4

*High River Ltd. P'ship v. Mylan Labs.*, Inc.,
353 F.Supp.2d 487 (M.D. Pa. 2005) ................................................................... 11

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009)............................................................................ 7

*In re Hoffmann-La Roche*,
587 F.3d 1333 (Fed. Cir. 2009)........................................................................... 19

*In re Link_A_Media Devices Corp.*,
662 F.3d 1221 (Fed. Cir. 2011)................................................................. 9, 10, 11

*In re Wyeth*,
406 F. App'x 475 (Fed. Cir. 2010) ...................................................................... 8

*IpVenture, Inc. v. Acer, Inc.*,
879 F. Supp. 2d 426 (D. Del. 2012)..................................................................... 9

*Jumara v. State Farm Ins. Co.*,
55 F.3d 873 (3d Cir. 1995)............................................................... 2, 7, 16, 17

*Kirschner Bros. Oil, Inc. v. Pannill*,
697 F. Supp. 804 (D. Del. 1988)......................................................................... 8

*MEC Resources, LLC v. Apple, Inc.*,
269 F. Supp. 3d 218 (D. Del. 2017)............................................................... 12, 13

*Mekiki Co. v. Facebook, Inc.*,
Civ. Act. No. 09-745 (JAP), 2010 WL 2348740 (D. Del. June 7, 2010)............................... 8, 9

*Mitel Networks Corp. v. Facebook, Inc.*,
943 F. Supp. 2d 463 (D. Del. 2013).................................................................... 12

*Nottenkamper v. Modany*,
No. CV 14-672-GMS, 2015 WL 1951571 (D. Del. Apr. 29, 2015) ....................................... 12

*Pennwalt Corp. v. Purex Indus., Inc.*,
659 F. Supp. 287 (D. Del. 1986)........................................................................ 11

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981) ........................................................................................................ 10

*Realtime Data LLC v. Fortinet, Inc.*,
    Civ. Act. No. 17-1635-CFC, 2018 WL 5630587 (D. Del. Oct. 31, 2018) ............................ 2, 4

*Reed v. Weeks Marine, Inc.*,
    166 F. Supp. 2d 1052 (E.D. Pa. 2001) ................................................................................ 11

*Rosebud LMS, Inc. v. Salesforce.com, Inc.*,
    Civ. Act. No. 17-1712-CFC, 2018 WL 6061343 (D. Del. Nov. 20, 2018) ............................. 4

*Security Sav. Bank, SLA v. Green Tree Acceptance, Inc.*,
    703 F. Supp. 350 (D.N.J. 1989) ......................................................................................... 11

*Shutte v. Armco Steel Corp.*,
    431 F.2d 22 (3d Cir. 1970) ................................................................................................ 2, 9

*Symantec Corp. v. Zscaler, Inc.*,
    Civ. Act. No. 17-806-MAK, 2017 WL 3262246 (D. Del. July 31, 2017) ................................ 8

*TC Heartland, LLC v. Kraft Foods Group Brands, LLC*,
    137 S. Ct. 1514 (2017) ....................................................................................................... 18

*Teleconference Sys. v. Proctor & Gamble Pharm., Inc.*,
    676 F. Supp. 2d 321 (D. Del. 2009) ................................................................................. 9, 16

*Tischio v. Bontex, Inc.*,
    16 F. Supp. 2d 511 (D.N.J. 1998) ...................................................................................... 11

*VLSI Tech. LLC v. Intel Corp.*,
    Civ. Act. No. 18-966-CFC, 2018 WL 5342650 (D. Del. Oct. 29, 2018) ...................... passim

Statutes

28 U.S.C. § 1400(b) ................................................................................................................. 7

28 U.S.C. § 1404(a) .............................................................................................................. 1, 2

28 U.S.C. §§ 1331 and 1338(a) ................................................................................................ 7

## I.       NATURE AND STATE OF THE PROCEEDINGS

This case is at its inception.  Plaintiff NST Global, LLC, d/b/a SB Tactical ("SB Tactical" or "Plaintiff"), filed its Complaint (D.I. 1) against Defendant SIG Sauer, Inc. ("SIG Sauer" or "Defendant"), only two months ago, on January 22, 2019.  SIG Sauer filed its Answer (D.I. 6) on February 13, 2019.  By Order dated March 13, 2019, the Court set an initial case scheduling conference for April 16, 2019.  There have been no other significant events to date.

## II.       ISSUE TO BE RULED UPON AND STANDARD OF REVIEW

### A.       Issue Presented

By its motion to transfer under 28 U.S.C. § 1404(a), filed herewith, SIG Sauer asks this Court to decide the following issue:

> Is New Hampshire more convenient and appropriate than Delaware for litigating a patent infringement dispute between two New Hampshire-based companies, where:
> - Plaintiff's business is a half hour drive from the New Hampshire federal courthouse;
> - virtually all of the Parties' witnesses and evidence are in New Hampshire;
> - the allegedly infringing products were designed in New Hampshire;
> - the Parties conducted their business with one another from New Hampshire and under New Hampshire contract law; and
> - Delaware's only connection to this dispute is that it is the state where Defendant is incorporated?

As set forth below, SIG Sauer respectfully contends that this case should be transferred to the U.S. District Court for the District of New Hampshire pursuant to Section 1404(a).

### B.       Standard For A Transfer Analysis Under § 1404(a)

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district … where it might have been brought." § 1404(a).  SB Tactical could have brought this case in the District of New Hampshire.  The Court, as a result, only needs to decide whether it should exercise its discretion to transfer.

1

The burden imposed by Section 1404(a) on a defendant is heavy, *Realtime Data LLC v. Fortinet, Inc.*, Civ. Act. No. 17-1635-CFC, 2018 WL 5630587, at *1 (D. Del. Oct. 31, 2018), but not impossible to carry. SIG Sauer must show that "a balancing of proper interests weighs in favor of the transfer" including by showing that "the convenience of the parties is strongly in favor" of transfer. *Id.*, *citing Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

While there is no finite list of factors to consider, the Third Circuit has identified twelve interests protected by Section 1404(a) that this Court may consider:

The **six private interests** are:

[1] plaintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [6] the location of books and records.

The **six public interests** are:

[7] the enforceability of the judgment; [8] practical considerations that could make the trial easy, expeditious, or inexpensive; [9] the relative administrative difficulty in the two fora resulting from court congestion; [10] the local interest in deciding local controversies at home; [11] the public policies of the fora; and [12] the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

## III.    SUMMARY OF THE ARGUMENT

This Court could, no doubt, deftly handle this dispute between SB Tactical and SIG Sauer (collectively, the "Parties"); the question, however, is why this Court should do so, since the business operations and virtually all of the relevant witnesses and evidence for both Parties are

located in New Hampshire.[1]

The Parties' business operations are located in southern New Hampshire, less than an hour's drive from each other; it is just over 20 miles from SB Tactical to the federal courthouse in Concord, New Hampshire. Brasseur Decl., ¶ 21. Indeed, SB Tactical's operations are headed by former SIG Sauer employees, who reside in New Hampshire. *Id.*, ¶¶ 19-23. Prior to this litigation, SB Tactical and SIG Sauer did business together for several years; their most recent distribution agreement designated New Hampshire as the forum for resolution of any disputes under that agreement. *Id.*, ¶¶ 14-16 & Exh. B thereto. The accused products are designed and assembled in New Hampshire, and sold from New Hampshire, all documents and physical evidence related to these activities, as well as related to the Parties' lengthy business relationship, are located in New Hampshire, and almost all of the relevant witnesses for both Parties are located in New Hampshire, *Id.*, ¶¶ 10-23, with the only exceptions being potential non-party witnesses in Maine and upstate New York (*id.*, ¶¶ 11-12), and the inventor of the patents-in-suit who resides in Florida. Carroll Decl., ¶ 6.

SIG Sauer recognizes the capabilities of this Court, particularly with respect to patent litigation; there is, however, no compelling reason for this Court to expend its valuable time and effort resolving a dispute between two companies residing in New Hampshire. No witnesses or evidence for either party are located in Delaware, and the sole connection to Delaware is that SIG Sauer was incorporated in Delaware. Litigating this dispute in this Court would be like

---

[1]    Alessandro Bosco, the named inventor of the patents-in-suit, lives in Florida. *See* Declaration of Laura L. Carroll ("Carroll Decl."), ¶ 6, filed herewith. While SB Tactical claims Mr. Bosco's residence as its corporate headquarters, that is belied by the fact that SB Tactical's actual business operations are in New Hampshire. *Id.*, ¶¶ 4, 7-9; Declaration of John Brasseur ("Brasseur Decl."), ¶¶ 16, 19-24, filed herewith.

holding the Granite Bowl in Delaware, or bringing the Route 1 Rivalry to New Hampshire.[2]  One

could do it, but why?[3]

     For all the reasons set forth above, as well as those below, SIG Sauer respectfully

requests that the Court transfer this case to the District of New Hampshire.

## IV.     FACTUAL BACKGROUND

     In its Complaint (D.I. 1), SB Tactical contends that SIG Sauer has infringed U.S. Patent

No. 8,869,444 and U.S. Patent No. 9,354,021 (collectively, the "Asserted Patents").  These

patents relate to a stabilizing brace used to secure a handgun to a user's forearm, via a strap, to

improve the user's ability to accurately and safely use the handgun with one hand.  The accused

products are SIG Sauer stabilizing devices.

     Neither SB Tactical, nor its Asserted Patents, appear to have any connection to Delaware.

While SB Tactical contends that its principal place of business is 1225 Darlington Oak Circle

NE, St. Petersburg, Florida, the building at that address is not a place of business.  Instead, it is a

residential estate located on a waterway in what appears to be a high-end residential

---

[2]    The Granite Bowl is an in-state rivalry dating back to 1901 between the two universities in
New Hampshire with NCAA Division 1 football teams, *see, e.g.*,
http://tinyurl.com/y4fmlqz7; http://tinyurl.com/y4kt6c73, while the Route 1 Rivalry, between
the University of Delaware and Delaware State University, warrants a Wikipedia listing:
https://en.wikipedia.org/wiki/Route_1_Rivalry.

[3]    This point highlights a critical distinction between this case and recent cases before this
Court where motions to transfer were requested and denied:  *VLSI Tech. LLC v. Intel Corp.*,
Civ. Act. No. 18-966-CFC, 2018 WL 5342650, at *4-5 (D. Del. Oct. 29, 2018); *Realtime
Data LLC v. Fortinet, Inc.*, Civ. Act. No. 17-1635-CFC, 2018 WL 5630587 (D. Del. Oct. 31,
2018); *Rosebud LMS, Inc. v. Salesforce.com, Inc.*, Civ. Act. No. 17-1712-CFC, 2018 WL
6061343 (D. Del. Nov. 20, 2018); and *Deere & Co. v. AGCO Corp.*, Civ. Act. No. 18-827-
CFC, 2018 WL 140886 (D. Del. Jan. 9, 2019).  None of the aforementioned cases involved a
dispute between two companies located near one another in another state, in connection with
a dispute that arose out of a business relationship made and performed in that state, and
concerning products designed in that state.

neighborhood.  *See* https://tinyurl.com/y5mlr87n; Carroll Decl., ¶ 5 & Exh. B thereto:



This residential property is owned by Mr. Bosco, the named inventor of the Asserted Patents.  A 3D satellite image from Google further evidencing the residential nature of this location follows:



*See* https://tinyurl.com/y5mlr87n.  While SB Tactical may claim that Mr. Bosco's residence is its corporate headquarters, plainly it is a residence.  In fact, SB Tactical does have an actual principal place of business, a commercial/industrial building located at 566 Harvey Road, Manchester, New Hampshire.  Carroll Decl., ¶¶ 7-13; Brasseur Decl., ¶¶ 16, 21-24.  An image of SB Tactical's New Hampshire facility follows:



This facility is the office location for its President and registered agent, Jeffry Creamer. Carroll Decl., ¶ 8. It is owned by a New Hampshire LLC, whose manager and NH resident agent, Jessica Pace, is SB Tactical's Director of Operations & Inventory Management, and appears to be Mr. Creamer's housemate as well, as the address of the owner of the SB Tactical building is Mr. Creamer's and Ms. Pace's residence in Chester, NH. *Id.*, ¶¶ 13-15.

Like SB Tactical, SIG Sauer also lacks any meaningful contacts with this District; its sole connection is its incorporation in Delaware. *See* Complaint (D.I. 1), ¶ 4; Answer (D.I. 6), ¶ 4. As Mr. Brasseur, SIG Sauer's Vice President of Product Management, states in his Declaration:

- SIG Sauer's principal place of business is in Newington, New Hampshire, and SIG Sauer has over 1700 employees in New Hampshire (Brasseur Decl., ¶¶ 6-8);

- SIG Sauer's operations of relevance in this matter are located at its facilities in Newington and Exeter, New Hampshire (*see id.*, ¶ 10);

- SIG Sauer maintains no place of business in Delaware (*see id.*, ¶ 25); and

- All relevant SIG Sauer witnesses, documents, and physical evidence are located in New Hampshire (*see id.*, ¶¶ 12-13, 18-19).

As SB Tactical acknowledges in its Complaint (¶¶ 26-30, 78, 84), SB Tactical and SIG Sauer entered into a distribution agreement in June 2016 (the "2016 Agreement") (copy attached as Exh. B to the Brasseur Decl.). That agreement contained an exclusive New Hampshire forum selection clause, as well as a New Hampshire governing law provision, in the event of any disputes under that agreement. *See id.,* Sections 10.2 & 10.3.[4] As evidenced by those contract provisions, when the Parties were doing business together, both recognized the appropriateness of resolving any disputes in New Hampshire, where they both had their business operations.

## V.  ARGUMENT AND AUTHORITIES

Section 1404(a) sets forth a two-step transfer analysis examining:  (1) whether the action could have been brought in the proposed transferee venue and (2) whether transfer would best serve the interests of justice and convenience. *See Jumara*, 55 F.3d at 879.

### A.  SB Tactical Could Have Filed Suit In The District Of New Hampshire

SB Tactical, indisputably, could have brought this suit in the District of New Hampshire. Subject matter jurisdiction in this case is based on the Federal Court's jurisdiction over patent litigations and that jurisdiction is as equally valid in the District of New Hampshire as it is in the District of Delaware. *See* 28 U.S.C. §§ 1331 and 1338(a). SIG Sauer maintains its principal place of business in New Hampshire, which supplies personal jurisdiction and venue over SIG Sauer in New Hampshire. *See* 28 U.S.C. § 1400(b).

Section 1404(a) does not require that the District of New Hampshire have jurisdiction over SB Tactical. *See In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009). Nonetheless,

---

[4]   Section 10.2 of the 2016 Agreement states that it is "governed by, and construed in accordance with, the laws of" New Hampshire, and Section 10.3 states that each party "irrevocably and unconditionally submits to the exclusive jurisdiction of such courts and agrees to bring any such action, litigation or proceeding only in" New Hampshire.

the District of New Hampshire does have personal jurisdiction over SB Tactical, since SB Tactical has substantial contacts with New Hampshire, given that its business operations, like SIG Sauer's, are located in New Hampshire.[5]

**B.** **The *Jumara* Factors Strongly Favor Transfer**

As discussed above on page 2, the Third Circuit has set forth twelve factors this Court may consider in its determination of whether a transfer is warranted under Section 1404(a).

**1.** **The Six Private Factors Favor Transfer**

As discussed in more detail below, each of the private factors, except for plaintiff's preference, weigh strongly in favor of transfer.

**a.** **SB Tactical's Choice Of Forum Minimally Weighs Against Transfer As SB Tactical Lacks A Presence In This District.**

The District of Delaware typically gives a plaintiff's choice of forum significant weight, but SB Tactical's choice of forum falls under an exception to that general principle. Because Delaware is not SB Tactical's "home turf," the "convenience to [SB Tactical] of litigating in [its] chosen forum is not as great [and] [t]his reduction in convenience lessens [SIG Sauer's] burden to show that the balance of convenience favors transfer." *Mekiki Co. v. Facebook, Inc*., Civ. Act. No. 09-745 (JAP), 2010 WL 2348740, at *4 (D. Del. June 7, 2010), *quoting Kirschner Bros. Oil, Inc. v. Pannill*, 697 F. Supp. 804, 806 (D. Del. 1988).

Because SB Tactical does not have any place of business in Delaware—let alone a principal place of business in Delaware—SB Tactical's choice of forum only "minimally" weighs against transfer. *E.g*., *Symantec Corp. v. Zscaler, Inc*., Civ. Act. No. 17-806-MAK, 2017

---

[5]  SIG Sauer can also demonstrate that it filed its motion to transfer with "reasonable promptness," *see In re Wyeth*, 406 F. App'x 475, 477 (Fed. Cir. 2010), since SIG Sauer is filing its motion to transfer while this case is still at its inception.

WL 3262246, at *2 (D. Del. July 31, 2017) (granting motion to transfer and holding that the plaintiff's choice of forum weighed "minimally against transferring venue" because it lacked a principal place of business in Delaware); *Mekiki Co.*, 2010 WL 2348740, at *4 (substantially same); *IpVenture, Inc. v. Acer, Inc.*, 879 F. Supp. 2d 426, 431 (D. Del. 2012) (substantially same); *Teleconference Sys. v. Proctor & Gamble Pharm., Inc.*, 676 F. Supp. 2d 321, 331 (D. Del. 2009) (substantially same).

SIG Sauer understands that this Court reads the relevant Third Circuit and Supreme Court precedent to preclude this "not plaintiff's home turf" exception and has therefore declined to follow the cases from the District of Delaware and the Federal Circuit which recognize this exception, including *In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011); *see, e.g.*, *VLSI*, 2018 WL 5342650, at *4-5. SIG Sauer will briefly address further facts and argument about this issue in case the Court deems it appropriate to reconsider its view of the law on this point.

The Third Circuit case relied upon by this Court for declining to recognize the "not plaintiff's home turf" exception is *Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3rd Cir. 1970). *E.g.*, *VLSI*, 2018 WL 5342650, at *4-5. But *Shutte* did not actually reach the issue of whether to recognize a "not plaintiff's home turf" exception and, instead, cited a general proposition that the weight of plaintiff's choice of forum is substantial. *See Shutte*, 431 F.2d at 25. While SIG Sauer understands how the Court might find that giving less weight to the forum choice of a plaintiff not on its "home turf" conflicts with giving "substantial weight" to the plaintiff's choice, there is no Third Circuit case law expressly addressing this issue.

This Court has found that the Federal Circuit's relevant holding from *Link_A_Media*, *i.e.*, that a non-resident plaintiff's choice of a Delaware forum is entitled to "less deference," is *dicta*

and only applies where the plaintiff is a foreign entity located outside the United States. *VLSI*, 2018 WL 5342650, at *4-5.

SIG Sauer respectfully suggests that the aforementioned holding cannot be considered "*dicta*" as it formed the basis for the Federal Circuit's grant of mandamus and entry of an order vacating the denial of a defendant's motion to transfer. In particular, the Federal Circuit found the District Court erred by placing too much weight on the plaintiff's choice of forum given that Delaware was not the plaintiff's "home turf." *Link_A_Media*, 662 F.3d at 1223.

The Federal Circuit's express language on this issue did not limit the exception to only apply when the plaintiff is a foreign entity. Indeed, the Federal Circuit only used the term "foreign" once in its *Link_A_Media* opinion. It did so to factually describe the plaintiff in a parenthetical summarizing the Supreme Court's decision in *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981). The Federal Circuit did not, however, incorporate the word "foreign" as a limitation into its statement of the relevant law.

SIG Sauer respectfully submits that the Federal Circuit would have had to use the term "foreign," or some similar term, in order to limit the plain language it used in the following statement of law, were its holding only to apply to foreign plaintiffs: "When a plaintiff brings its charges in a venue that is not **its home forum**, however, that choice of forum is entitled to less deference." *Link_A_Media*, 662 F.3d at 1223 (emphasis added). The Federal Circuit's language indicates that the described plaintiff has a "home forum." A foreign entity would not consider any venue in the entire United States its "home forum." Accordingly, the Federal Circuit's statement of law expressly covers instances where the plaintiff is a U.S.-based entity with its home forum in a state other than where it filed the Complaint.

In its *VLSI* decision, 2018 WL 5342650, at *4-5, this Court drew an inference that the

"not plaintiff's home turf" exception was limited to only apply where the plaintiff was a foreign

entity because the Federal Circuit relied, in part, upon two Supreme Court cases where the

plaintiff was a foreign entity. However, the Federal Circuit did not just rely upon case law where

the plaintiff was from another country. In support of its holding, the Federal Circuit observed

that many of the District Courts in the Third Circuit, including the District of Delaware, have

recognized the proposition that a non-resident plaintiff's choice of forum is entitled to less

weight. *See Link_A_Media*, 662 F.3d at 1223, *citing Pennwalt Corp. v. Purex Indus., Inc.*, 659

F. Supp. 287, 287-88 (D. Del. 1986) ("Plaintiff Pennwalt is a Pennsylvania corporation with its

principal place of business in Philadelphia."); *High River Ltd. P'ship v. Mylan Labs*., Inc., 353

F.Supp.2d 487, 498-99 (M.D. Pa. 2005) ("Plaintiff is organized under the laws of Delaware and

has its principal place of business in Mount Kisco, New York."); *Reed v. Weeks Marine, Inc*.,

166 F. Supp. 2d 1052, 1057 (E.D. Pa. 2001) ("Mr. Reed is a resident of Florida and the accident

of which he complains occurred in the navigable waters of the Chesapeake Bay near Baltimore,

Maryland."); *Tischio v. Bontex, Inc.,* 16 F. Supp. 2d 511, 522 (D.N.J. 1998) ("Patricia Tischio is

a resident of the State of Connecticut."). The Federal Circuit's reliance on these cases confirms

that the Federal Circuit's ruling that the forum choice of a plaintiff suing outside its home forum

is entitled to less weight was not limited to foreign plaintiffs.

Finally, SIG Sauer asks the Court to consider a point relied upon by a neighboring

District Court, the District of New Jersey. A plaintiff's choice of forum cannot always be

entitled to such a strong and unyielding deference in a transfer analysis, because this would run

the risk of collapsing "any difference between [S]ections 1404 and 1406 ... as well as render[ing]

Congress' codification of the common law doctrine of forum non conveniens meaningless."

*Tischio v. Bontex, Inc*., 16 F. Supp. 2d 511, 521 (D.N.J. 1998); *Security Sav. Bank, SLA v. Green*

*Tree Acceptance, Inc.*, 703 F. Supp. 350, 353 (D.N.J. 1989) (citations omitted).

Setting aside the issue of the weight to be afforded to a plaintiff's choice of forum under the first *Jumara* factor, this Court has also held that the fact that Delaware is not a plaintiff's "home turf" is important to consider in connection with six additional *Jumara* factors: 3 (whether the claim arose elsewhere), 4 (convenience of the parties), 5 (convenience of the witnesses), 6 (location of books and records), 8 (practical considerations that could make the trial easy, expeditious, or inexpensive), and 10 (the local interest in deciding local controversies at home). *VLSI*, 2018 WL 5342650, at *4-5. Accordingly, SIG Sauer understands that—at the very least—the Court will take the fact that SB Tactical has no place of business in this District into consideration when ruling on whether to grant SIG Sauer's motion to transfer.

### b. SIG Sauer's Preference For New Hampshire Weighs In Favor Of Transfer

A defendant's forum preference factor weighs in favor of transfer where the defendant can articulate a "rational, legitimate reason to support that preference." *Nottenkamper v. Modany*, No. CV 14-672-GMS, 2015 WL 1951571, at *3 (D. Del. Apr. 29, 2015). All of the reasons set forth under factors 1, 3-6, & 8-10, incorporated herein by reference, constitute rational and legitimate reasons in support of transfer.

### c. The Claims Arose And Should Be Resolved In New Hampshire.

In one sense, a claim for patent infringement might be considered to "arise" whenever and wherever someone makes uses, offers to sell, or sells any patented invention without permission. *See MEC Resources, LLC v. Apple, Inc.*, 269 F. Supp. 3d 218, 225 (D. Del. 2017). Because SIG Sauer operates on a national level, this factor could be considered neutral if one looked no further than the nature of the claim at issue. *See Mitel Networks Corp. v. Facebook,*

*Inc.*, 943 F. Supp. 2d 463, 470 (D. Del. 2013).

However, the District of Delaware also considers where the accused products were designed when determining where a claim for patent infringement arose for purposes of a transfer motion. *MEC Resources*, 269 F. Supp. 3d at 225. The Accused Products were designed in New Hampshire. Brasseur Decl., ¶ 10. SIG Sauer's research and development, management, finance, marketing, and sales operations are located in New Hampshire. *Id.*, ¶¶ 6-14. The acts giving rise to SB Tactical's claim of infringement have a strong connection to the District of New Hampshire, and no connection to Delaware. Therefore, this factor heavily favors transfer.

### d.       The Convenience Of The Parties Favors Transfer

An analysis of the convenience of the parties takes into account "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *See MEC Resources,* 269 F. Supp. 3d. at 225 (internal quotation omitted).

**The Parties' physical location**: Neither Party maintains a physical presence in Delaware. *See* Brasseur Decl., ¶¶ 6, 21; Carroll Decl., ¶¶ 7-13. SIG Sauer's corporate headquarters is located at 72 Pease Boulevard, Newington, New Hampshire 03801, on the site of the former Pease Air Force Base. Brasseur Decl., ¶ 6. SIG Sauer's Newington, NH headquarters is a 206,000 sq. ft. state-of-the-art facility, where, in addition to the corporate offices, SIG Sauer designs, manufactures and sells firearms and firearms accessories. *Id.*

In addition to its headquarters in Newington, SIG Sauer has four other facilities in New Hampshire: the SIG Sauer Academy ProShop, in Epping, NH, where the complete line of SIG Sauer pistols, rifles, ammunition, silencers, electro-optics, airguns and accessories are showcased, facilities in Dover, NH and Portsmouth, NH, as well as a facility in Exeter, NH, where SIG Sauer

had been based until it moved its corporate headquarters and manufacturing operations to the larger Newington facility in 2013. Brasseur Decl., ¶ 7. Since then, the Exeter, NH facility has been used by SIG Sauer for research and development. *Id.* SIG Sauer has almost 1700 employees in New Hampshire. *Id.*, ¶ 8.

As noted above, SIG Sauer entered into a business relationship with SB Tactical, in which SIG Sauer agreed to sell stabilizing arm braces manufactured by SB Tactical. *Id.*, ¶ 14. While at the beginning of the SB Tactical-SIG Sauer distribution relationship, the SB Tactical products had sold well, SB Tactical failed to update or improve their products, with the result that sales began to fall off dramatically. *Id.*, ¶ 17. As a result, when the agreement governing their relationship came up for renewal in June 2017, SIG Sauer decided not to renew, and instead to design its own products. *Id.* Some of the products SIG Sauer designed are now the Accused Products in this lawsuit. *Id.*

The Accused Products were designed, developed, tested, and assembled in New Hampshire. *Id.*, ¶¶ 10, 12. SIG Sauer employees involved in the design of the Accused Products include:

- Christopher D'Alfonso, Design Engineer, at SIG Sauer's R&D facility in Exeter, NH;
- Bryan Dustin, Design Engineer, also at the R&D facility in Exeter;
- Patrick Hanley, Product Manager, Rifles, at SIG Sauer's headquarters in Newington;
- Mark Kimball, Design/Drafter, at the R&D facility in Exeter;
- Luke Morenz, Mechanical Engineer, at the R&D facility in Exeter; and
- Scott Shinkle, Industrial Designer, at the R&D facility in Exeter.

*Id.*, ¶ 12.

Many witnesses based in New Hampshire have knowledge about SIG Sauer's previous business relationship with SB Tactical, and that knowledge is relevant to a host of issues including infringement, invalidity, and damages. For SIG Sauer, these witnesses include:

- John Brasseur, based at SIG Sauer's headquarters in Newington;

- Patrick Hanley, Product Manager, also based in Newington; and

- Paul Harper, Buyer, also based in Newington.

Brasseur Decl., ¶ 18. For SB Tactical, these witnesses include several former SIG Sauer employees now employed by SB Tactical who are believed to reside in New Hampshire:

- Jeffry Creamer, who had been SIG Sauer's Director, Product Management at its Newington, NH facility until the end of 2015, when he left to go work for SB Tactical; Mr. Creamer was involved in the SIG Sauer-SB Tactical business relationship first on SIG Sauer's behalf and then on SB Tactical's behalf; and

- Amy Pevear, who had been SIG Sauer's Director of Marketing Communications, who also left to go work for SB Tactical.

*Id*., ¶¶ 19-23.

SIG Sauer maintains no place of business in Delaware, has no distributors or dealers located in Delaware, and does not ship any products to wholesale customers or distributors in Delaware. *Id*., ¶¶ 25-27. To the best of its knowledge, SIG Sauer has never been sued in Delaware, other than this lawsuit, and SIG Sauer has never filed a lawsuit in Delaware. *Id*., ¶ 29.

SB Tactical's business operations are located in a commercial/industrial building in Manchester, New Hampshire. *Id*., ¶ 21. Mr. Creamer, a New Hampshire resident, is SB Tactical's President. *Id*., ¶ 20; Carroll Decl., ¶¶ 8, 14-15. SIG Sauer has not located any information to support that SB Tactical has any business locations in Delaware or even any significant contacts with the state.

These facts support transfer; indeed, there is no evidence that Delaware is convenient for the Parties or their witnesses. *See Teleconference Sys.,* 676 F. Supp. 2d at 333 (lack of witnesses residing in Delaware rather than California weighed in favor of transfer).

**Logistical and operational costs to the Parties' employees in traveling to Delaware:** Litigation in Delaware would impose logistical burdens and operational costs on each of the Parties' respective employees who are needed to travel to Delaware, since none of them are located in or near Delaware. Given how close the Parties' business operations are to one another in New Hampshire, these burdens and costs would appear to impact each of the Parties' relevant employees to the same degree. Both Parties' employees would face significantly less logistical issues and operational costs traveling to the courthouse for the District of New Hampshire, which is close to both Parties' business operations. These facts support transfer.

**The relative ability of each party to bear these costs in light of its size and financial wherewithal**: While SIG Sauer does not know the financial or logistical impact on SB Tactical if its employees (all based in New Hampshire) are required to travel to Delaware for this case, presumably it is the same as the impact on SIG Sauer, and would be a burden substantially greater than requiring employees to drive an hour or less to the federal courthouse in New Hampshire. Litigating in Delaware would be substantially more expensive for the Parties than litigating in New Hampshire. Accordingly, these facts weigh in favor of transfer.

### e. The Convenience Of Witnesses That Might Otherwise Be Unavailable For Trial Favors New Hampshire

This factor carries weight "to the extent that the witnesses may actually be unavailable for trial in one of the fora." *VLSI*, 2018 WL 5342650, at *7, *citing Jumara*, 55 F.3d at 879. When developing the Accused Products, SIG Sauer utilized the services of John Wilson, an outside consultant, who is based in East Waterboro, Maine. Brasseur Decl., ¶ 12. East

Waterboro is just over 60 miles from the federal courthouse in New Hampshire. *Id.* As Mr.

Wilson is outside of the trial subpoena power of this court, this factor weighs in favor of transfer.

**f.    New Hampshire Is The Location Of Each Parties' Relevant Evidence**

All relevant documents and physical evidence, including the Accused Products and

prototypes and designs relating thereto, are located in New Hampshire. *See id.*, ¶ 13. However,

this Court has held that *Jumara* gives weight to the location of books and records only to the

extent that they could not be produced in Delaware. *VLSI*, 2018 WL 5342650, at *7.

The Accused Products are utilized with, and physically attach to a firearm, since the

purpose of the Accused Products is to assist a shooter in supporting a firearm. SB Tactical

contends that the Accused Products attach to a "rail mounting interface" on a firearm. *See*

Complaint (D.I. 1), ¶¶ 40-41. The rail mounting interface is purportedly integrated into a

firearm. *See id.*; *see also* Asserted Patents (attached as Exhs. A & B to Complaint) and SB

Tactical's counsel's letter to SIG Sauer's counsel (attached as Exh. C to Complaint).

For a court to assess SB Tactical's infringement claims, it will need to see the Accused

Products attached to a firearm. Transporting the required firearms from SIG Sauer's New

Hampshire facilities to the New Hampshire courthouse is a much simpler proposition than

bringing this critical physical evidence to Delaware.

In addition, the facilities associated with the design, assembly, testing, and sales of the

Accused Products are in New Hampshire. SB Tactical's business operations are also in New

Hampshire. There may well be a need to perform inspections of each Party's respective business

operations and such inspections could only occur in New Hampshire.

Given the nature of the technology, the location of office, design, assembly, and testing

facilities in New Hampshire, the fact that neither party has any business operations in Delaware,

and the lack of any relevant evidence in Delaware, this factor weighs in favor of transfer.

###### 2. The Public Factors Each Either Favor Transfer Or Are Neutral

Public factors 8, 9, & 10 weigh in favor of transfer for the reasons set forth below, while public factors 7, 11, and 12 are neutral and/or inapplicable. With respect to factor 7, the location of the litigation will not impact the enforceability of the judgment. SIG Sauer is not aware of any public policy differences between the two fora that would make an analysis under factor 11 material to this dispute. Factor 12 is also irrelevant to the Parties' patent infringement dispute since it relates to state law diversity cases.

###### a. The Practical Considerations That Could Make A Trial Easy, Expeditious, Or Inexpensive Favor Transfer.

As for factor 8, it cannot be disputed that holding trial in New Hampshire would be more logistically and economically efficient than holding trial in Delaware. Almost all of the Party witnesses would be within driving distance to the New Hampshire courthouse; if the case remains in Delaware, all witnesses would need to fly to Delaware and incur lodging costs. Certainly the logistics of transporting firearms and firearm attachments intrastate are simpler than shipping them to Delaware. Moreover, to the extent the jury would need to "take a view" of any facilities or operations, that option would be available in New Hampshire and impractical to execute in Delaware. This factor, thus, weighs in favor of transfer.

###### b. The District Of New Hampshire Is Less Burdened.

As for factor 9, as this Court is acutely aware, the District of Delaware currently handles more patent cases than perhaps any other District and has seen a dramatic rise in filings following *TC Heartland, LLC v. Kraft Foods Group Brands, LLC*, 137 S. Ct. 1514 (2017). *E.g.*, https://tinyurl.com/y5xrrpr2. As can be seen from the most recent U.S. District Court statistics, http://tinyurl.com/y5ahmpoa, the District of New Hampshire does not have as heavy a caseload.

        **c.**      **New Hampshire Has An Interest In Resolving A Dispute Between Two New Hampshire Companies Which Arose In New Hampshire.**

As for factor 10, Delaware has no connection to the events giving rise to the instant matter, while New Hampshire has a significant interest. SIG Sauer and SB Tactical both operate their businesses in and from New Hampshire. This dispute arose from that relationship, based on activity conducted in New Hampshire, including the design and sale of the Accused Products.

The reverberations from this dispute echo within the firearms industry in New Hampshire. This case calls into question the Parties' respective reputations and businesses. New Hampshire's significantly greater interest in resolving this dispute weighs heavily in favor of transfer. *See In re Hoffmann-La Roche*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) (finding factor 10 supported transfer where the "the cause of action calls into question the work and reputation of" local defendants residing and conducting business in the transferee district).

## VI.    CONCLUSION

WHEREFORE, Defendant SIG Sauer, Inc. respectfully requests that this court grant SIG Sauer's motion to transfer, order the Clerk to transfer this action to the United States District Court for the District of New Hampshire, and grant SIG Sauer such other and further relief as the Court deems just and proper. The Parties' dispute should end where it began, in the Parties' home state of New Hampshire.

 Dated: March 27, 2019

Respectfully submitted,

 */s/ Helena C. Rychlicki*
Helena C. Rychlicki (DE No. 3996)
PINCKNEY, WEIDINGER, URBAN & JOYCE LLC
3711 Kennett Pike, Suite 210
Greenville, DE 19807
Tel: (302) 504-1497
Fax: (302) 442-7046
hrychlicki@pwujlaw.com

Laura L. Carroll (admitted *pro hac vice*)
Eric G. J. Kaviar (admitted *pro hac vice*)
Anthony E. Faillaci (admitted *pro hac vice*)
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110-1624
Tel: (617) 345-3000
Fax: (617) 345-3299
lcarroll@burnslev.com
ekaviar@burnslev.com
afaillaci@burnslev.com

*Attorneys for Defendant SIG Sauer, Inc.*

4836-4468-0078.7

## CERTIFICATE OF SERVICE

I, Helena C. Rychlicki, Esquire, certify that, on March 27, 2019, a copy of the *Opening Brief in Support of Defendant SIG Sauer, Inc.'s Motion for Transfer to The District of New Hampshire* was served via electronic notification on those individuals who receive CM/ECF notices in this case.


/s/ Helena C. Rychlicki
Helena Rychlicki (DE No. 3996)