# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NST GLOBAL, LLC, d/b/a SB TACTICAL,<br><br>     **Plaintiff,**<br><br>**v.**<br><br>**SIG SAUER INC.,**<br><br>     **Defendant.** | **Case No. 1:19-cv-00121-CFC**<br><br>**PLAINTIFF NST GLOBAL, LLC, d/b/a SB TACTICAL'S ANSWERING BRIEF IN RESPONSE TO THE DEFENDANT'S MOTION TO TRANSFER VENUE** |

## PLAINTIFF NST GLOBAL, LLC, d/b/a SB  TACTICAL'S ANSWERING BRIEF IN RESPONSE TO THE DEFENDANT'S MOTION TO TRANSFER VENUE

Raeann Warner (DE Bar No. 004931)
Jacobs & Crumplar, P.A.
750 Shipyard Drive
Suite 200
Wilmington, Delaware 19801
Telephone: (302)-600-1935
Email: Raeann@jcdelaw.com

-and-

Brittany J. Maxey-Fisher (Fla. Bar No. 44586)
(admitted Pro Hac Vice)
William R. Brees (Fla. Bar No. 98886)
(admitted Pro Hac Vice)
MAXEY-FISHER, PLLC
100 Second Avenue South
Suite 401 North
St. Petersburg, Florida 33701
Telephone: (727) 230-4949
Email: bmaxeyfisher@maxeyfisher.com
  wbrees@maxeyfisher.com
  lpg@maxeyfisher.com

*Counsel for Plaintiff*
*NST Global, LLC d/b/a SB Tactical*

# TABLE OF CONTENTS

I. Nature and Stage of the Proceedings ........................................................................... 1

II. Summary of the Argument ...................................................................................... 1

III. Statement of Facts ............................................................................................... 1

    A. The Carroll Declaration ..................................................................................... 2

    B. The Brasseur Declaration ................................................................................... 4

    C. The June 2016 Distribution Agreement ................................................................. 5

    D. Additional Factual Considerations ........................................................................ 5

IV. Argument and Legal Authority ................................................................................ 6

    A. The Private Interest Factors ................................................................................ 6
        1. The Plaintiff's Forum Preference Weighs Strongly Against Transfer ..................... 6
        2. The Defendant's Forum Preference is of Minimal Weight when Considering
           Transfer .............................................................................................. 9
        3. Where the Claim Arose is at Most a Neutral Factor ......................................... 9
        4. The Convenience of the Parties Weighs Against Transfer .................................. 10
        5. The Lack of Any Potential Inconvenience on the Sole Non-Party Witness
           Identified Thus Far Does Not Favor Transfer .............................................. 12
        6. The Location of the Books and Records is an Irrelevant Factor .......................... 13

    B. The Public Interest Factors ................................................................................ 14
        1. The Enforceability of the Judgement is a Neutral Factor .................................. 14
        2. Practical Considerations Related to Trial Efficiency Further Support the Case
           Remaining in Delaware .......................................................................... 14
        3. The Relative Administrative Difficulty of Delaware and New Hampshire is a
           Neutral Factor in the Analysis ................................................................. 15
        4. Local Interests in Deciding the Controversy is a Neutral Factor ......................... 15
        5. Delaware Public Policy Favors Denial of the Motion to Transfer ....................... 16
        6. Trial Court Familiarity with State Law in Diversity Cases is a Neutral Factor
           in this Case ......................................................................................... 16

V. Conclusion ........................................................................................................ 16

**TABLE OF AUTHORITIES**

**CASES**

*Affymetrix, Inc. v. Synteni, Inc.*, 28 F.Supp.2d 192 (D. Del. 1998) .................................... 13

*Cellectis S.A. v. Precision Bioscienses, Inc.*, 858 F.Supp.2d 376 (D. Del. 2012) ......................... 10

*Cradle IP, LLC v. Texas Instruments, Inc.*, 923 F.Supp.2d 696 (D. Del. 2013) ........................... 10

*Genedics, LLC v. Meta Co.*, No. CV 17-1062-CJB,
2018 WL 417950 (D. Del. Jan. 12, 2018) .................................................................. 6, 7

*Genetech, Inc. v. Amgen Inc.*, No. CV 17-1407-GMS,
2018 WL 503253 (D. Del. Jan. 22, 2018) ............................................................... 10-13

*Graphics Props. Holdings Inc. v. Asus Computer Int'l, Inc.*,
964 F. Supp. 2d 320 (D. Del. 2013) ...................................................................... 11

*In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011) ............................................. 8, 9

*Intellectual Ventures I LLC v. Altera Corp.*, 842 F.Supp.2d 744 (D. Del. 2012) ................ 9, 11, 16

*Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*,
797 F.Supp.2d 472 (D. Del. 2011) ..................................................................... 6, 7, 10

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995) ........................................ *passim*

*MEC Resources, LLC v. Apple, Inc.*, 269 F.Supp.3d 218 (D. Del. 2018) ................................... 9, 10

*Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311 (Fed. Cir. 2011) ............................................ 11

*Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) ....................... 8

*Praxair, Inc. v. ATM, Inc.*, 2004 WL 883395 (D. Del. Apr. 20, 2004) ....................................... 10

*Realtime Data LLC v. Fortinet, Inc.*, No. CV 17-1635-CFC,
2018 WL 5630587 (D. Del. Oct. 31, 2018) ......................................................... 7-9, 16

*Round Rock Research, LLC v. Dell, Inc.*, 904 F.Supp.2d 374 (D. Del. 2012) .............................. 16

*Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3d Cir. 1970) ............................................................. 6

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422,
127 S.Ct. 1184, 167 L.Ed.2d 15 (2007) ................................................................... 8

*Treehouse Avatar LLC v. Valve Corp.*, 170 F.Supp.3d 706 (D. Del. 2016) ................................... 9

*TriStata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F.Supp.2d 635 (D. Del. 2008)............................ 15

*VLSI Tech. LLC v. Intel Corp.*, No. CV 18-966-CFC,
    2018 WL 5342650 (D. Del. Oct. 28, 2018) .................................................. 6-9, 12-15

## STATUTES

28 U.S.C. § 1404(a) .................................................................................... 6, 11

## RULES

Federal Rule of Civil Procedure 32(a)(4)(B) ................................................. 13

Federal Rule of Evidence 201 ........................................................................ 2

Federal Rule of Evidence 803 ........................................................................ 2

Federal Rule of Evidence 902 ..................................................................... 2, 3

Local Rule 7.1.3(c)(1)(E) ............................................................................... 2

## I.     NATURE AND STAGE OF THE PROCEEDINGS

The Plaintiff acknowledges the accuracy of the dates identified by the Defendant in its

Opening Brief with regard to the procedural history of this matter.

## II.     SUMMARY OF THE ARGUMENT

The Court should deny the Defendant's Motion to Transfer (the "Motion") because the

application of the twelve-factor analysis established by *Jumara v. State Farm Ins. Co.*, 55 F.3d

873, 879 (3d Cir. 1995) to the facts of this case weigh heavily against transfer of the action.  The

following factors unquestionably discourage transfer: the Plaintiff's choice of forum, the

convenience of the parties, the practical considerations related to trial efficiency and cost, and the

public policy concerns of the fora.  The following factors are neutral to the analysis: the location

where the claim arose, the convenience of witnesses, the location of the books and records, the

enforceability of a judgment, the relative administrative difficulty of the courts to hear the

dispute, the local interests of the fora, and the trial court familiarity with state law in diversity

cases.  The only factor that weighs in favor of transfer is the Defendant's preference of New

Hampshire as the forum, which should be given minimal weight in light of the Defendant's

incorporation in Delaware.  Accordingly, the balancing of the factors in this case dictates that the

Defendant's Motion should be denied and the case should remain in Delaware.

## III.     STATEMENT OF FACTS

This case arises out of the Defendant's infringement of the Plaintiff's patents, specifically

U.S. Patent No. 8,869,444 and U.S. Patent No. 9,354,021 (the "Patents-in-Suit").  The Patents-

in-Suit correspond to a stabilizing attachment that connects to the rear of a handgun and permits

the user to secure the handgun to his or her arm via a strap, thereby stabilizing the handgun and

improving the user's ability to accurately and safely use the handgun with one hand. While the Plaintiff acknowledges that Local Rule 7.1.3(c)(1)(E) does not require the recitation of facts contained in the Opening Brief, the insufficiency or irrelevance of several allegations within the Defendant's Statement of Facts require reiteration and evaluation herein. Most of the "evidence" utilized by the Defendant in crafting its Statement of Facts originates in the Declaration of Laura L. Carroll, Esq. (the "Carroll Declaration") and the Declaration of John Brasseur (the "Brasseur Declaration"). A notable amount of the supposed information contained in said Declarations lacks the necessary indicia of authentication and admissibility required for it to be relied on by the Court.

A.    **The Carroll Declaration**

Exhibits B and C of the Carroll Declaration are alleged printouts from real estate websites with entries related to the Plaintiff's principal place of business. Exhibits G and L are purported printouts from real estate or reverse address search websites related to alleged New Hampshire addresses associated with Jeffry Creamer (President of the Plaintiff) and a company in which Mr. Creamer and Jessica Pace (the Plaintiff's Director of Operations and Inventory Management) are alleged to have an interest. Exhibit J is claimed to be a printout of Ms. Pace's LinkedIn profile page. All of these business records fail to satisfy the certification requirements of Federal Rules of Evidence 803 and 902. As such, these documents lack authentication and contain inadmissible hearsay the Defendant is seeking to rely on in its Motion. Furthermore, these alleged records fail to constitute the types of sources for which the accuracy thereof could not be reasonably questioned to make them subject to judicial notice pursuant to Federal Rule of Evidence 201.

Exhibits E, H, and I are public records from the States of New Hampshire and Florida. However, they are not certified or signed copies of the documents they alleged to be. Therefore, the records also do not meet the standards of Rule 902 for self-authentication. Understanding that the authentication standards are not always strictly applied by courts when assessing copies of public records during preliminary matters, the Plaintiff nonetheless contends that the Court would be justified in refusing to rely on these records even at this early stage in the proceedings and, instead, apply Rule 902 to exclude them from its analysis.

Beyond the fact that all but three exhibits cited in the Carroll Declaration fail authenticity and admissibility standards, several averments made within the Defendant's Statement of Facts that rely on the unauthenticated and inadmissible exhibits amount to nothing more than self-serving, unsubstantiated assumptions or conclusions. In particular, the Defendant's assumption that the Plaintiff's corporate headquarters cannot be what is listed on its Florida Annual Report due to the alleged residential nature of the address fails to recognize that individuals can and often do utilize properties for dual residential and business purposes. Absent any zoning ordinances or related municipal codes that prevent such utilization of real property, nothing prevents this common practice.

Moreover, the Defendant's attempts to identify the building located at 566 Harvey Road, Manchester, New Hampshire (the "Harvey Road Warehouse") as the Plaintiff's principal place of business lack merit. In addition to relying on the deficient exhibits, the Defendant's conclusion essentially embraces the assumption that a company's principal place of business could be wherever someone can find a building with the company's name on it. The Defendant's assumption ignores the reality that in this digital age a company's primary business operations can easily exist in a location that is not a traditional brick and mortar associated with

the business.  Accordingly, the Court should ignore the Defendant's statements regarding the alleged primary place of business for the Plaintiff.

The plain truth is that Florida, not New Hampshire, is the location in which the Plaintiff's executive operations primarily originate.  *See* Declaration of Alessandro Bosco, ¶ 9.  As the Defendant recognizes, the Plaintiff's Chief Executive Officer and the sole named inventor of the Patents-in-Suit, Alessandro Bosco, resides in Florida.  *Id.* at ¶¶ 3-5.  Furthermore, the assumptions as to Mr. Creamer and Ms. Pace's state of residency fail to consider that individuals might own or be associated with real property outside of their state of residency.  In fact, Mr. Creamer and Ms. Pace are in the process of relocating to Florida.  *See* Declaration of Jeffry Creamer, ¶¶ 4-7; Declaration of Jessica Pace, ¶¶ 4-7.   To be clear, the three individuals from the Plaintiff's organization that it anticipates testifying at trial, *i.e.* Mr. Bosco, Mr. Creamer, and Lisa Durello (Plaintiff's Chief Financial Officer), all reside or will soon reside in Florida.  *See* Bosco Declaration, ¶¶ 4, 10-11.  As such, all of the Plaintiff's relevant representatives will be traveling from Florida for trial.

### B.    The Brasseur Declaration

Like the Carroll Declaration, the Brasseur Declaration assumes that Mr. Creamer continues to reside in New Hampshire.  *See* Brasseur Declaration, ¶ 23.  However, there is no basis for this assertion other than the alleged understanding of the declarant.

The Brasseur Declaration also makes several self-serving statements regarding the lack of connections with Delaware that can easily be rebutted. *See* Brasseur Declaration ¶¶ 26-27. Specifically, at least one Delaware distributor and retailer of Sig Sauer products sells the

Accused Products in Delaware, specifically the Cabela's store located in Christiana, Delaware. *See* Declaration of William Brees, ¶¶ 7-10, Exhibits 1-2.[1]

It is axiomatic from the substance of the Carroll Declaration, the Brasseur Declaration, and the alleged facts presented by the Defendant via citation to these Declarations that the Defendant is desperately grasping at straws in an effort to create an uncorroborated factual analysis that it believes will facilitate the transfer of this case to New Hampshire. For these reasons, this Court should reject the objectionable Exhibits in the Carroll Declaration and the unsupported conclusions in the Defendants Statement of Facts based on both Declarations.

### C. The June 2016 Distribution Agreement

With regard to Defendant's emphasis on the June 2016 Distribution Agreement (the "2016 Agreement") in its Statement of Facts, it is entirely misplaced. The Defendant seeks to rely on the forum selection and choice of law provisions in the 2016 Agreement in suggesting that the Plaintiff inherently acknowledged the convenience and propriety of New Hampshire as the jurisdiction to hear any type of dispute between the parties. The Defendant fails to cite, and the Plaintiff is unaware of, any legal authority establishing that when a party agrees to a particular forum to govern an agreement that said party also thereby concedes to that forum being convenient for any and all disputes outside of the scope of the agreement. The absence of such legal authority should not be surprising to anyone, since it would embrace a completely absurd line of reasoning. Selecting a forum to hear disputes arising under one agreement merely means that the parties, for whatever reason, agreed to that forum hearing disputes arising under that specific agreement, nothing more. Furthermore, it should be noted that the Defendant ignores the fact that the predecessor to the 2016 Agreement, more specifically the 2013

---

[1] The statements contained in the Brees Declaration are presented for the purpose of impeachment of the Brasseur Declaration.

Distribution Agreement (the "2013 Agreement"), which was also attached to the Brasseur

Declaration, specified Florida as the choice of law and forum for disputes arising under the 2013

Agreement. Under the Defendant's line of reasoning, Florida would be an equally proper venue

for this case.

### D.    Additional Factual Considerations

As delineated above, the Plaintiffs' representatives that would likely be witnesses at trial

are either currently or will soon be residing in the Tampa Bay region of Florida. Furthermore,

this Court's location is within twenty-two (22) miles of a major international airport,

Philadelphia International Airport. *See* Request for Judicial Notice, ¶ 1. On the contrary, the

municipality associated with the district to which the Defendant is seeking transfer, *i.e.* Concord,

New Hampshire, is approximately seventy (70) miles from the nearest major international

airport, Boston Logan International Airport. *Id.* at ¶ 2.

## IV.    ARGUMENT AND LEGAL AUTHORITY

In ruling on the Defendant's Motion, the Court must determine whether it should exercise

its broad discretion in refusing to transfer this case to New Hampshire from the state in which the

Defendant has availed itself via incorporation, *i.e.* Delaware. When deciding whether to transfer

a case under 28 U.S.C. § 1404(a), the Court should apply a twelve-factor analysis as established

by *Jumara*, 55 F.3d at 879. Within this analysis are six private interest factors and six public

interest factors. The party seeking transfer has the substantial burden to establish that the

balancing of the twelve factors weighs strongly in favor of transfer. *VLSI Tech. LLC v. Intel

Corp.*, No. CV 18-966-CFC, 2018 WL 5342650, at *1 (D. Del. Oct. 28, 2018) (citing *Shutte v.

Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)); *Genedics, LLC v. Meta Co.*, No. CV 17-

1062-CJB, 2018 WL 417950, at *2 (D. Del. Jan. 12, 2018) (quoting *Shutte v. Armco Steel Corp.*,

431 F.2d 22, 25 (3d Cir. 1970)).  The application of the private and public interest factors to the circumstances of this case definitively demonstrate that the Defendant cannot surmount this heavy burden.  Accordingly, the Defendant's Motion should be denied.

A.      The Private Interest Factors

1.      The Plaintiff's Forum Preference Weighs Strongly Against Transfer.

In emphasizing the deference that should be afforded to a plaintiff's choice of forum, the court in *Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.* emphasized, "It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed."  797 F.Supp.2d 472, 478 (D. Del. 2011) (citing *Shutte*, 431 F.2d at 25); *accord Realtime Data LLC v. Fortinet, Inc.*, No. CV 17-1635-CFC, 2018 WL 5630587, at *2 (D. Del. Oct. 31, 2018); *VLSI*, 2018 WL 5342650, at *4.  So long as the Plaintiff has a legitimate reason for bringing the action in the chosen forum, substantial deference should be given to that choice.  *Id.*  In this matter, the Plaintiff certainly has legitimate reasons for choosing this District, so its choice of forum is entitled to great deference.  For instance, the Defendant is incorporated in Delaware, and "it is rational and legitimate for a plaintiff to choose to sue a defendant in that defendant's state of incorporation – a district where a plaintiff can have certainty that there will be personal jurisdiction over the defendant."  *Genedics*, 2018 WL 417950, at *3.  This is alone enough to give the Plaintiff's choice of Delaware as the forum for this dispute significant deference.

The Defendant cites the alleged "home turf" rule in its efforts to argue that the Plaintiff's choice of Delaware as the forum for this patent infringement dispute should be given little or no weight.  These efforts are wholly futile.  In making these arguments, the Defendant largely relies on outdated caselaw that fails to overcome the recently established line of precedent rejecting the

home turf rule. In particular, this Court has specifically and consistently rejected similar claims by parties seeking transfer, finding that the alleged home turf rule has no place in an analysis of the first private interest factor identified in *Jumara*. *See, e.g., Realtime*, 2018 WL 5630587, at *2 (rejecting the home turf rule and refusing to give less weight to the plaintiff's preference of forum on the basis of the forum not being the plaintiff's place of organization or incorporation); *VLSI*, 2018 WL 5342650, at *4 (substantially same); *Genetch, Inc. v. Amgen Inc.*, No. CV 17-1407-GMS, 2018 WL 503253, at *3 (D. Del. Jan. 22, 2018) (substantially same).

Furthermore, the Defendant unsuccessfully attempts to challenge this Court's well-reasoned determination in *VLSI* that the language in *In re Link_A_Media Devices Corp.* suggesting that less deference should be given to a plaintiff's choice of forum when it is not the plaintiff's home forum amounts to mere dicta. *See VLSI*, 2018 WL 5342650, at *5 (evaluating *In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011)). The Defendant fails to recognize that the relevant reference in the *Link_A_Media* decision constitutes dicta because it was not essential to the ultimate decision made by the court in that case, which was that the district court had not evaluated all of the twelve *Jumara* factors and that an actual balancing of the factors under the particular circumstances of that case weighed in favor of transfer. Similarly, the Defendant fails in its efforts to undermine this Court's determination that the ruling in *Link_A_Media* only applies when the plaintiff is a foreign entity. This Court in *VLSI* astutely recognized the significance of the primary cases cited in *Link_A_Media* being United States Supreme Court decisions related to foreign entities filing suit in the United States, specifically *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 430, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007) and *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 256, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). Moreover, in *VLSI*, the court noted that the plaintiff in *Link_A_Media*

was also a foreign entity. The significance of these aspects of the *Link_A_Media* case cannot be emphasized enough. The Defendant's claims that the *Link_A_Media* decision would need to specifically use the term "foreign" to have the limited effect this Court found in *VLSI* not only ignores these critical elements of the decision but also disregards the instances in which the court in *Link_A_Media* identified the plaintiff as a Bermuda company and specifically used the term "foreign" when summarizing the critical holding of the *Piper Aircraft* decision on which it relied. As such, the Defendant's criticisms of the reasoned rationale embraced by this Court in *VLSI* should be rejected in their entirety.

For these reasons, the Court should continue to follow its reasoning in *Realtime* and *VLSI*, thereby finding that significant deference should be given to the Plaintiff's choice of this District and that the first private interest factor weighs heavily against transfer of the action.

### 2. The Defendant's Forum Preference is of Minimal Weight when Considering Transfer.

While the Defendant obviously prefers New Hampshire as the jurisdiction to hear this dispute, it fails to delineate anything outside of the other private interest factors identified in *Jumara* as a reason for why it prefers New Hampshire. Regardless of whether the Defendant's reliance on the other factors constitutes a "rational, legitimate" basis for the preferred forum, which is certainly questionable, it should be given much less deference than the Plaintiff's choice of forum. *See Intellectual Ventures I LLC v. Altera Corp.*, 842 F.Supp.2d 744, 755 (D. Del. 2012) (holding that a defendant's forum choice is to be afforded less deference than a plaintiff's). As such, the Defendant's preference should at most weigh very minimally in favor of transfer.

### 3. Where the Claim Arose is at Most a Neutral Factor.

It is a well-recognized rule of law that "a claim for patent infringement arises wherever someone has committed acts of infringement, to wit, 'makes, uses, offers to sell, or sells any

patented invention' without authority." *Genetech*, 2018 WL 503253, at *4; *see also VLSI*, 2018 WL 5342650, at *6 (citing *Treehouse Avatar LLC v. Valve Corp.*, 170 F.Supp.3d 706, 710 (D. Del. 2016) (noting that "patent claims arise wherever the allegedly-infringing products are sold"). Application of this fundamental principle has a neutral impact on the analysis under this Court's precedent because, as the Defendant concedes, it operates on a national level and sells its products to consumers in Delaware.

Nonetheless, the Defendant argues that the claim is more connected to New Hampshire because that is where it allegedly designed the Accused Products. In pursuing this argument, the Defendant cites *MEC Resources, LLC v. Apple, Inc.*, 269 F.Supp.3d 218 (D. Del. 2018). However, *MEC Resources* and the precedent on which it relies suggest that the alleged design of the Accused Products in the transferee forum would at most weigh slightly in favor of transfer, not strongly as the Defendant claims. Furthermore, when taking into account the fact that several judges within this District have found that the sale of accused products in Delaware actually weighs against transfer, the factor is neutral at best. *See, e.g., Cradle IP, LLC v. Texas Instruments, Inc.*, 923 F.Supp.2d 696, 699 (D. Del. 2013) (finding that the factor weighted against transfer due to the sale of the accused products in Delaware); *Cellectis S.A. v. Precision Biosciences, Inc.*, 858 F.Supp.2d 376, 381 (D. Del. 2012) (holding the sale of the products alleged to have infringed on the patents-in-suit in Delaware would weigh against transfer of the action to a forum outside of Delaware).

### 4. The Convenience of the Parties Weighs Against Transfer.

The convenience of the parties factor is evaluated in light of the litigants' "relative physical and financial condition[s]." *VSLI Tech.*, 2018 WL 5342650, at *6. Because the Defendant is admittedly a global enterprise, the Defendant can "demonstrate 'inconvenience' for

§ 1404(a) purposes *only* if it 'prove[s] that litigating in Delaware would pose a unique or unusual burden on [its] operations.'" *Id.* (emphasis added) (quoting *Graphics Props. Holdings Inc. v. Asus Computer Int'l, Inc.*, 964 F. Supp. 2d 320, 325 (D. Del. 2013)); *see also Checkpoint Software*, 797 F.Supp.2d at 477 (holding, "Unless the defendant 'is truly regional in character' – that is, it operates essentially exclusively in a region that does not include Delaware – transfer is almost always inappropriate" (quoting *Praxair, Inc. v. ATM, Inc.*, 2004 WL 883395, at *1 (D. Del. Apr. 20, 2004))). The Defendant cannot meet this standard. Despite identifying a handful of its employees that might have to travel to Delaware for trial, the Defendant offers no other basis for its claim of inconvenience. The Defendant, who attests to having over 1,700 employees in one state alone, obviously has substantial financial resources and would not face any actual, extraordinary burden by having the trial conducted in Delaware. *See* Brasseur Declaration, ¶ 8.

Furthermore, the Defendant chose to incorporate in Delaware, which further undermines the legitimacy of its claims that litigating in Delaware would be inconvenient for it. The Defendant's claims of lacking any "significant contacts" with Delaware blithely yet intentionally ignores the impact that taking advantage of a state's benefits via incorporation has on creating contacts with the state. *See Genetech*, 2018 WL 503253, at *4 (finding that a defendant's "allegations of inconvenience are contradicted by the fact that it voluntarily chose to incorporate in Delaware"); *Altera*, 842 F.Supp.2d at 756 (holding that a defendant that incorporates in Delaware "willingly submitted to suit there, which weighs in favor of keeping the litigation in Delaware" (citing *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1332 (Fed. Cir. 2011))). For these reasons, the Defendant cannot satisfy the substantial burden that would be required for it to establish inconvenience under this factor.

In arguing this factor, the Defendant further attempts to perpetuate the untruth that the Plaintiff's business operations are in New Hampshire. However, repeating a false statement fails to give it legitimacy. The Plaintiff is organized under the law of Florida, operates primarily out of Florida, and will have all of its relevant representatives traveling from the Tampa Bay region of Florida for the trial of this matter. Even if the Court considers the Defendant's cited but unsubstantiated Exhibits to the Carroll Declaration that suggest that the Plaintiff's corporate headquarters have a residential character, they would be insufficient to undermine the Bosco Declaration, Creamer Declaration, and Pace Declaration, which show that Florida is the base of the Plaintiff's operations. In addition, this Court's location is within 22 miles of a major international airport, Philadelphia International Airport. *See* Request for Judicial Notice, ¶ 2. On the contrary, the municipality associated with the district to which the Defendant is seeking transfer, *i.e.* Concord, New Hampshire, is approximately 70 miles from the nearest international airport, Boston Logan International Airport. *Id.* at ¶ 2. Based on this undisputable information, the Plaintiff's representatives could access this Court much easier than they could access the District of New Hampshire.

The private interest factor of the parties' convenience weighs heavily against transfer because the Defendant fails to prove inconvenience under the applicable standards and the Plaintiff has shown that it would experience greater hardship by bringing its representatives to New Hampshire, as opposed to Delaware, for trial.

     **5.**     **The Lack of Any Potential Inconvenience on the Sole Non-Party Witness Identified Thus Far Does Not Favor Transfer.**

The convenience of the witnesses factor only comes into account when considering individuals that "actually will refuse to testify absent a subpoena." *Genetech*, 2018 WL 503253, at *4; *see also VLSI Tech.*, 2018 WL 5342650, at *7 (emphasizing that "[t]his factor carries

weight 'only to the extent that the witnesses may actually be unavailable for trial in one of the fora'" (quoting *Jumara*, 55 F.3d at 879)). As the Defendant recognizes, this factor does not consider the parties' employees, as those individuals' attendance at trial must be secured by the parties. *See VLSI Tech.*, 2018 WL 5342650, at *7 (finding that the obligation of the parities to procure the attendance of their employees render party witnesses of no consequence in the analysis of this factor when ruling on a motion to transfer (citing *Affymetrix, Inc. v. Synteni, Inc.*, 28 F.Supp.2d 192, 203 (D. Del. 1998))).

The sole witness the Defendant points to in arguing that this factor weighs in favor of transfer is John Wilson, an alleged consultant that assisted the Defendant with the development of the Accused Products. The Defendant claims that Mr. Wilson resides in East Waterboro, Maine, but the Defendant offers no declaration from Mr. Wilson or other independent, certified documentation verifying this place of residence. Instead, the Defendant relies on the apparent knowledge of Mr. Brasseur as delineated in the Brasseur Declaration. Assuming arguendo that this information is accurate, Mr. Wilson's testimony could be secured via deposition in York County, Maine and that deposition testimony would be admissible at trial pursuant to Federal Rule of Civil Procedure 32(a)(4)(B). Accordingly, there is no convenience of witnesses issue that would be at play in this matter, rendering this factor neutral.

### 6.     The Location of the Books and Records is an Irrelevant Factor.

The factor related to the location of the parties' books and records only becomes relevant if those materials cannot be produced in the original forum selected by the plaintiff. *VLSI Tech.*, 2018 WL 5342650, at *7 (citing *Jumara*, 55 F.3d at 879); *Genetech*, 2018 WL 503253, at *5. Here, all the relevant evidence can be brought to trial in Delaware. While the Defendant again attempts to improperly reference the Plaintiff's business operations as being in New Hampshire,

which they are not, it would not matter even if they were. Furthermore, the Defendant's operations in New Hampshire are irrelevant to the analysis of this factor. Even if the parties desired to inspect any of the premises in New Hampshire, which would seem to be a very unlikely discovery request, that would only relate to discovery and not have an impact on the ability to bring any of the relevant, physical evidence to trial in Delaware.

In particular, the issues in this case relate to intellectual property, *i.e.* the Patents-in-Suit, not any real property, and whether the Accused Products infringe on those patents. Moreover, the Defendant's argument that firearms would need to be transported amounts to nothing more than a tactic to exaggerate and misrepresent the actual evidence at issue. In particular, there would be no need for firearms to be transported to Delaware for trial. The Accused Products are stabilizing attachments, not firearms, and the Patents-in-Suit relate to the utility of those stabilizing attachments. If necessary, any demonstration of the functionality of the Accused Products or the Plaintiff's products practicing the patented invention can be accomplished with the use of firearm models composed of solid plastic. In short, neither of the parties would have a need to transport any firearms to trial. All of the physical evidence can easily be taken to Delaware for trial, thereby making this factor one that weighs against transfer or is, at most, neutral.

**B.     The Public Interest Factors**

**1.     The Enforceability of the Judgment is a Neutral Factor.**

Judgments from Delaware and New Hampshire courts would be equally enforceable. Thus, this is a neutral factor in this case.

**2.     Practical Considerations Related to Trial Efficiency Further Support the Case Remaining in Delaware.**

Practical considerations are those that "make the trial easy, expeditious, or inexpensive." *VLSI*, 2018 WL 5342650, at *7 (citing *Jumara*, 55 F.3d at 879). The Defendant's arguments with regard to this factor are nothing more than a restatement of its previous contentions related to other factors, and repetition of those arguments in this section of its Opening Brief does not alter the unconvincing nature of them. In particular, the Defendant continues to misrepresent that all party witnesses are in Delaware, when all of the Plaintiff's witnesses will actually be traveling from the Tampa Bay region of Florida for trial. The Defendant again cites alleged logistic difficulties in transporting firearms to Delaware for trial, when that proposition lacks all credibility. As previously noted, even if necessary to show how the Accused Products attach to a firearm at trial, which is unlikely in light of the nature of the infringement, such a demonstration could be accomplished with the use of firearm models. Also, the Defendant's claim that the jury might be required to view the premises of the Defendant's operation in New Hampshire is entirely absurd. This is an intellectual property dispute related to moveable goods, and the Defendant cannot genuinely claim that the trier of facts would ever need to inspect any operations facilities. Moreover, it would be much more convenient and less expensive for the Plaintiff to litigate in Delaware, due to the greater ease of travel there as opposed to New Hampshire as more fully analyzed in the convenience of the parties section above. In light of the foregoing, this factor weighs heavily against transfer.

### 3. The Relative Administrative Difficulty of Delaware and New Hampshire is a Neutral Factor in the Analysis.

The Defendant's cryptic attempt to suggest that the administrative difficulty of the respective courts weighs in favor of transfer is wholly unpersuasive. The Defendant has failed to cite any actual evidence to demonstrate that this Court could not set this matter for trial under a

reasonable timeline.  This is a neutral factor in the analysis, and it appears that the Defendant actually acknowledges this by analyzing this factor in a rather vague manner.

### 4. Local Interests in Deciding the Controversy is a Neutral Factor.

The local controversy factor in this case is neutral.  In arguing otherwise, the Defendant again seeks to characterize itself and the Plaintiff as New Hampshire entities, when that is not the case.  Although repetitive, the Plaintiff must again echo its earlier assertions that the Defendant is a Delaware corporation, and the Plaintiff is a Florida limited liability company.  The Defendant's claims that New Hampshire somehow has a local interest in the controversy blatantly ignores the fact that this is a patent infringement case in which the "issues do not give rise to a local controversy or implicate local interests." *Realtime*, 2018 WL 5630587, at *8 (citing *TriStata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F.Supp.2d 635, 643 (D. Del. 2008)).

### 5. Delaware Public Policy Favors Denial of the Motion to Transfer.

While the Defendant claims that the public policy concerns of each jurisdiction is a neutral factor, Delaware does in fact embrace a public policy for businesses incorporated in Delaware to actually litigate cases in Delaware.  See *VLSI*, 2018 WL 5342650, at *9 (holding, "Delaware's public policy encourages Delaware corporations to resolve their disputes in Delaware courts" (citing *Round Rock Research, LLC v. Dell, Inc.*, 904 F.Supp.2d 374, 378 (D. Del. 2012))); *Altera*, 842 F.Supp.2d at 760 (finding, "[T]he public policy of Delaware encourages the use by Delaware corporations of Delaware as a forum for resolution of business disputes").  As such, this factor weighs against transfer.

### 6. Trial Court Familiarity with State Law in Diversity Cases is a Neutral Factor in this Case.

Given that this matter is a federal patent infringement case, state law does not apply.  Thus, this factor is inapplicable to the current analysis and neutral.

**V. CONCLUSION**

All but one of the private interest factors and all of the public interest factors either weigh against transfer or are neutral at best. At least four of the factors weigh heavily against transfer, and the sole factor arguably weighing in favor of transfer, *i.e.* the Defendant's choice of forum, should be given extremely minimal deference. This analysis demonstrates that the Defendant has failed to meet its heavy burden to prove that the factors strongly favor transferring this action. For these reasons, the Court should deny the Defendant's Motion.

Dated this 10th day of April, 2019.

Respectfully submitted,

 /s/Raeann Warner 
Raeann Warner (DE Bar No. 004931)
Jacobs & Crumplar, P.A.
750 Shipyard Drive
Suite 200
Wilmington, Delaware 19801
Telephone: (302)-600-1935
Email: Raeann@jcdelaw.com

-and-

Brittany J. Maxey-Fisher (Fla. Bar No. 44586)
(admitted Pro Hac Vice)
William R. Brees (Fla. Bar No. 98886)
(admitted Pro Hac Vice)
MAXEY-FISHER, PLLC
100 Second Avenue South
Suite 401 North
St. Petersburg, Florida 33701
Telephone: (727) 230-4949
Email: bmaxeyfisher@maxeyfisher.com
        wbrees@maxeyfisher.com
        lpg@maxeyfisher.com

*Counsel for Plaintiff*
*NST Global, LLC d/b/a SB Tactical*
