UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**NST Global, LLC,**
**d/b/a SB Tactical**

      v.

**SIG Sauer Inc.**

Case No. 19-cv-792-PB
Opinion No. 2020 DNH 044

## MEMORANDUM AND ORDER

NST Global, LLC d/b/a SB Tactical ("Plaintiff" or "SB Tactical") filed this patent infringement action, alleging that SIG Sauer Inc. ("Defendant" or "SIG Sauer") infringes two of its patents. SIG Sauer filed petitions for <u>inter partes</u> review ("IPR") with the U.S. Patent and Trial Appeal Board ("PTAB") of the Patent and Trademark Office ("PTO"), challenging the validity of all twelve claims in the two asserted patents in this case. SIG Sauer now moves to stay proceedings in this court pending the resolution of the IPRs. For the reasons that follow, Defendant's motion to stay is granted.

### I. BACKGROUND

SB Tactical brought this action alleging direct, induced, and contributory infringement of two patents it owns: U.S. Patent No. 8,869,444 ("the '444 Patent") and U.S. Patent No. 9,354,021 ("the '021 Patent"). Compl., Doc. No. 1 at 2-3. In its

complaint, SB Tactical alleges, <u>inter alia</u>, that SIG Sauer manufactures and sells several products that share a similar design to handgun stabilizing braces claimed in SB Tactical's patents. Doc. No. 1 at 2-3. SB Tactical filed its complaint on January 22, 2019 in the U.S. District Court for the District of Delaware. Doc. No. 1 at 1. SIG Sauer moved to transfer the case to the District of New Hampshire on March 27. Defs.' Mot. to Transfer, Doc. No. 15 at 1. The District of Delaware granted the motion to transfer on July 9. Transfer Order, Doc. No. 44 at 1.

On September 25, the parties submitted a joint discovery plan, which proposed the following deadlines:

- Commencement of claim construction discovery: October 10, 2019
- Amendment of pleadings: January 7, 2020
- Exchange of preliminary claim constructions, extrinsic evidence, and identification of references: January 20, 2020
- Filing of joint claim construction and prehearing statement: February 17, 2020
- Completion of claim construction discovery and commencement of non-claim construction discovery: March 9, 2020
- Opening claim construction briefs: March 30, 2020
- Responsive claim construction briefs: April 13, 2020

Proposed Disc. Plan, Doc. No. 65 at 8-9. The parties also proposed that a claim construction hearing be held "not later than [sixty] days after service of Responsive Claim Construction Briefs"; that all fact and expert discovery be complete "[forty-five] days after service of rebuttal expert disclosures"; that

2

motions for summary judgment be filed "no later than 120 days before trial"; and that trial occur during the "[t]wo-week period beginning [January 5, 2021]." Doc. No. 65 at 9–11. I approved the parties' plan on September 30, 2019.

On January 23, 2020, SIG Sauer submitted IPR petitions for the '444 and '021 patents. Carroll Decl., Doc. No. 68-2 at 1–2. Its IPR challenges all twelve claims in the two patents. Doc. No. 68-2 at 1–2. On January 30, it filed a motion requesting that I stay proceedings in this court, pending the resolution of the IPR petition. Def.'s Mot. to Stay pending inter partes review, Doc. No. 68 at 1.

**B.** *Inter Partes* **Review**

The IPR process was created in 2012 as part of the Leahy-Smith America Invents Act ("AIA"). See 35 U.S.C. §§ 311–319. IPR is an expedited procedure for challenging the validity of a patent before the PTO and PTAB. Id. It replaced the earlier inter partes reexamination process, which frequently took many years to complete. See, e.g., PersonalWeb Techs., LLC v. Facebook, Inc., Nos. 5:13-CV-01356-EJD; 5:13-CV-01358-EJD; 5:13-CV-01359-EJD, 2014 WL 116340, at *2 (N.D. Cal. Jan. 13, 2014) ("IPR, if instituted, will typically conclude within 18 months of the filing date. In contrast, the average time from filing to conclusion of the previous inter partes reexamination procedure

ranged from 28.9 to 41.7 months.") (citing 77 Fed. Reg. 48680-01 at 48721).

Once a petitioner requests IPR, the patent owner has three months to file a preliminary response, 35 U.S.C. § 313; 37 C.F.R § 42.107(b), after which the PTO has three months to determine whether to institute IPR, 35 U.S.C. § 314(b)(1). The PTO may institute an IPR only if it determines that "there is a reasonable likelihood that the petitioner would prevail with respect to at least [one] of the claims challenged in the petition." 35 U.S.C. § 314(a). If the PTO grants an IPR petition, the final determination in the IPR must be issued within one year from the date that the petition is granted. 35 U.S.C. § 316(a)(11)[1].

Because SIG Sauer filed its petition on January 23, SB Tactical will have until late April to respond. Depending upon when SB Tactical responds, the PTO will have until as late as July to decide whether to institute IPR.

## II. **ANALYSIS**

I have the inherent power to manage my docket by staying proceedings. Landis v. N. Am. Co., 299 U.S. 248, 254-55, 57 S.

---

[1] The one-year deadline may be extended up to six months for good cause shown. 35 U.S.C. § 316(a)(11).

Ct. 163, 81 L. Ed. 153 (1936). This includes stays of proceedings pending the resolution of a related matter before the PTO. Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988). It is within my discretion to grant a stay, based upon an analysis of the same three factors previously used to grant or deny a stay pending the earlier inter partes reexamination. See In re Corel Software LLC, 778 Fed. Appx. 951, 952–54 (Fed. Cir. 2019) (reviewing magistrate judge's application of "traditional" inter partes reexamination stay factors to an IPR stay request); accord SurfCast, Inc. v. Microsoft Corp., No. 2:12-CV-333, 2014 WL 6388489, at *1 (D. Me. Nov. 14, 2014). These three factors are:

> (1) the stage of the litigation, including whether discovery is complete and a trial date has been set; (2) whether a stay will simplify the issues in question and the trial of the case; and (3) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party.

SurfCast, 2014 WL 6388489, at *1. "The analysis considers the totality of the circumstances, and 'while prior decisions may prove instructive, the inquiry is largely case[-]specific.'" ACQIS, LLC v. EMC Corp., 109 F. Supp. 3d 352, 356 (D. Mass. 2015) (quoting SurfCast, 2014 WL 6388489, at *1).

As I explain below, I find that the balance of the three factors tips in favor of granting a stay.

**A.   Stage of the Litigation**

Evaluating this prong requires me to "consider the progress already made in the case." PersonalWeb Techs., LLC v. Google Inc., 2014 WL 4100743, at *4 (N.D. Cal. Aug. 20, 2014). I must determine "whether litigation has progressed significantly enough for a stay to be disfavored." PersonalWeb Techs., LLC v. Apple Inc., 69 F. Supp. 3d 1022, 1025 (N.D. Cal. 2014). "The earlier the stage of proceedings, the greater the reason to grant a stay." SurfCast, 2014 WL 6388489, at *2.

This factor weighs heavily in favor of granting a stay in this case. The Markman hearing has not yet been briefed, let alone held. Cf., e.g. SurfCast, 2014 WL 6388489, at *2 (granting stay even though Markman order had issued). Non-claim construction discovery has barely begun. See Qualcomm Inc. v. Apple Inc., No. 3:17-CV-2403-CAB-MDD, 2018 WL 4104966, at *3 (S.D. Cal. Aug. 29, 2018) (granting stay where "the majority of fact and expert discovery is still to be completed"). Although this case was filed over a year ago, much of this time was spent litigating the motion to transfer, rather than the substantive issues of the case. Indeed, "the most burdensome stages of the case[] — completing discovery, preparing expert reports, filing and responding to pretrial motions, preparing for trial, going through the trial process, and engaging in post-trial motions practice — all lie in the future." IOENGINE, LLC v. PayPal

6

Holdings, Inc., Nos. CV 18-452-WCB, CV 18-826-WCB, 2019 WL 3943058, at *5 (D. Del. Aug. 21, 2019).[2]

B. **Simplification of the Issues**

Courts consider the question of whether a stay is likely to simplify the issues at trial to be the "most important factor." IOENGINE, 2019 WL 3943058, at *8. There are myriad ways in which an IPR could simplify this case. Specifically,

> (1) all prior art presented to the Court will have been first considered by the USPTO with its particular expertise; (2) many discovery problems relating to the prior art can be alleviated by the USPTO examination; (3) in those cases resulting in effective invalidity of the patent, the suit will likely be dismissed; (4) the outcome of the reexamination may encourage a settlement without the further use of the Court; (5) the record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation; (6) issues, defenses and evidence will be effectively limited in pre-trial conferences after a reexamination; and (7) the cost of litigation will likely be reduced.

In re Body Science LLC Patent Litig., No. 12-10536-FDS, 2012 WL 5449667, at *3 (D. Mass. Nov. 2, 2012) (listing ways in which the inter partes reexamination process may simplify a case) (quoting Nidec Corp. v. LG Innotek Co., Ltd., No. 6:07cv108, 2009 WL 3673433, at *2 (E.D. Tex. Apr. 3, 2009); accord Destination Maternity Corp. v. Target Corp., 12 F. Supp. 3d 762,

---

[2] I also consider "whether . . . a trial date has been set." SurfCast, 2014 WL 6388489, at *1. Although trial in this case has been set, it is scheduled for the two-week period beginning January 5, 2021. Even assuming no changes to the trial schedule, this is not so imminent as to warrant denying a stay.

7

769 (E.D. Penn. 2014) (quoting Gioello Enters. Ltd. v. Mattel, Inc., No. 99-375, 2001 WL 125340, at *1 (D. Del. Jan. 29, 2001) (listing same potential simplification benefits in analysis of stay pending IPR).

Once IPR has been granted, the issues are likely to be simplified regardless of which party prevails. Any invalidated claims will no longer be before the court, and SIG Sauer will be estopped from presenting to the court "any ground that [it] raised or reasonably could have raised during [the IPRs]".[3] 35 U.S.C. § 315(e)(2); see Canatelo, LLC v. Avigilon Corp., No. 12-1431-JAG, 2014 WL 2533407, at *2 (D.P.R. June 5, 2014) ("If the patent-in-suit is invalidated, Plaintiff's patent claims here evaporates [sic]. Alternatively, in case the patent board rules in favor of Plaintiff, any invalidity arguments based on prior art would be moot here. Simplicity is achieved either way.") This is especially true where, as here, a party seeks IPR of all relevant claims. See Uniloc USA Inc. v. LG Electronics U.S.A. Inc., Nos. 18-cv-06737-JST, 18-cv-06739-JST, 18-cv-06740-JST,

---

[3] To the extent SB Tactical argues that this estoppel will not significantly simplify the issues before the court because SIG Sauer "may find and assert previously unknown prior art upon resumption of the litigation, so long as a skilled searcher conducting a diligent search reasonably would not have been expected to discover the new reference," Pl.'s Mem. in Opp. of Def.'s Mot. to Stay, Doc. No. 69 at 19, this argument is entirely speculative and I decline to address it.

2019 WL 1905161, at *4 (Apr. 29, 2019) ("[T]he requested stay presents the maximum potential for simplification of issues, as all the asserted claims are challenged in the IPR petitions. This high upside mitigates to some extent the risk that the PTO will deny review.").

SB Tactical advances two arguments for why this factor does not favor SIG Sauer, neither of which is persuasive. First, it argues that, because the PTO has yet to institute IPR, whether the issues will be simplified is speculative at best. Second, it argues that simplification will be limited because SIG Sauer's invalidity contentions are broader than the scope of IPR. I address each argument in turn.

1. <u>Pre-institution Stays</u>

Some courts are reluctant to stay proceedings before the PTO has instituted IPR. The U.S. District Court in Delaware, for example, "almost invariably den[ies] requests for stays pending IPR proceedings when the stay requests are filed before the IPR is instituted." IOENGINE, 2019 WL 3943058, at *6 (identifying three Delaware cases where request for pre-institution stay was denied without prejudice as to petitioner's right to seek stay again if IPR were granted). This per se rule, however, is hardly universal, and courts in numerous other districts across the country have granted stays before IPR was instituted. See, e.g., Uniloc, 2019 WL 1905161, at *7; Neuro Cardiac Techs., LLC v.

LivaNova, Inc., No. CV H-18-1517, 2018 WL 4901035, at *5 (S.D. Tex. Oct. 9, 2018); TAS Energy, Inc., v. San Diego Gas & Elec. Co., No. 12cv2777-GPC(BGS), 2014 WL 794215, at *6 (S.D. Cal. Feb. 26, 2014).

Two considerations persuade me that this factor weighs in SIG Sauer's favor, even though IPR has not yet been instituted. First, if IPR is not instituted, "the stay will be short, only four months." TAS Energy, 2014 WL 794215, at *4. If the IPR petition is rejected, this stay will be lifted, and the case can move forward after a relatively brief pause.

Second, if I defer ruling on the stay until July, the parties and the court will need to move through several labor-intensive stages of litigation that may ultimately be rendered meaningless or duplicative. If we continue on the current schedule, the parties will need to submit their opening and responsive claim construction briefs. Then, I will hold a Markman hearing and likely issue a Markman order before the PTO decides whether to institute IPR. All the while, discovery would be ongoing. These efforts would be wasted if the PTO then granted review and invalidated some of or all the claims at issue. The potential impact of the PTO's decision is "enough to await at least the [PTO's] initial institution decisions before moving forward." Provisur Techs., Inc. v. Weber, Inc., No. 5:19-

CV-06021-SRB, 2019 WL 4131088, at *2 (W.D. Mo. Aug. 29, 2019) (analyzing stay under inter partes reexamination system).[4]

2. Issues Not Subject to IPR

SB Tactical also correctly notes that SIG Sauer has raised invalidity contentions that cannot be resolved in IPR. As both parties concede, IPRs cannot address indefiniteness, written description, enablement, or new matter issues. Thus, assuming SB Tactical's patents survive IPR, those issues would remain for trial.[5] The IOENGINE court addressed this precise concern, but ultimately concluded that IPR was nevertheless likely to simplify the case, noting that

> [w]hen a court is deciding whether to grant a stay, there is no requirement that issues in the IPR be identical to those in the litigation. . . . [I]ssues of patent eligibility, inequitable conduct, and validity under section 112 of the Patent Act will never be subject to review in an IPR. But that does not mean that the IPR

---

[4] This determination is bolstered by the Federal Circuit's decision in VirtualAgility Inc. v. Salesforce.com, Inc., 759 F. 3d 1307 (Fed. Cir. 2014). While VirtualAgility dealt with a stay pending a Covered Business Method ("CMB") patent review, rather than an IPR, the court based its ruling on a consideration of the same factors. In discussing whether it was preferable to wait for the PTAB to institute review before granting a stay, the court "express[ed] no opinion on which is the better practice." Id. at 1316.

[5] Both parties ask me to rule on the merits of SIG Sauer's invalidity contention. A motion to stay, however, is not the appropriate time to address the merits of the claim, and I decline to do so. Cf. VirtualAgility, 759 F. 3d at 1313 (holding that second-guessing the PTAB's "more likely than not" determination that a CMB claim would be held invalid "amounts to an improper collateral attack" and that "allowing it would create serious practical problems").

> will not significantly simplify the litigation both with
> respect to the invalidity issues that are addressed in
> the IPR and with respect to collateral matters such as
> claim construction and characterization of the state of
> the art on which the PTAB's expertise may be helpful in
> the district court proceeding.

IOENGINE, 2019 WL 3943058, at *10. The fact that IPR cannot —

and was never designed to — resolve these issues does nothing to

diminish the fact that, if instituted, IPR will significantly

simplify the issues before this court.

Because an IPR on some or all relevant claims would

significantly simplify the issues before the court, and SB

Tactical's arguments to the contrary do not persuade me

otherwise, I conclude that this factor weighs heavily in favor

of granting a stay.

C.  **Prejudice to SB Tactical**

The last factor is "whether a stay would unduly prejudice

or present a clear tactical disadvantage[6] to the non-moving

party." Uniloc, 2019 WL 1905161, at *5 (quoting TPK Touch Sols.,

Inc. v. Wintek Electro-Optics Corp., No. 13-cv-02218-JST, 2013

WL 6021324, at *4 (N.D. Cal. Nov. 13, 2013)). "Courts are

generally reluctant to grant a stay in a matter where the

---

[6] Apart from noting that "SIG Sauer waited until the last
possible day on which it could file the an [sic] [IPR] against
each of the patents in suit", Doc. No. 69 at 6, SB Tactical does
not advance any argument that SIG Sauer engaged in dilatory
tactics.

12

parties are direct competitors on the rationale that a stay would likely cause the non-movant to lose substantial profits and goodwill on the market." Canfield Sci., Inc. v. Drugge, No. CV 16-4636 (JMV), 2018 WL 2973404, at *3 (D.N.J. June 13, 2018).

In this case, it is abundantly clear that SB Tactical and SIG Sauer are direct competitors. While SIG Sauer correctly points out that "[t]he mere fact that companies might sell similar products does not prove they are 'direct competitors'"; Reply, Doc. No. 72 at 4 n.3 (citing Transocean Offshore Deepwater Drilling, Inc. v. Seadrill Ams., Inc., CIV. A. No. H-15-144, 2015 WL 6394436, at *3 (S.D. Tex. Oct. 22, 2015)); but this is more than a case of similar products.[7] SB Tactical alleges, and SIG Sauer does not deny, that SIG Sauer used to sell SB Tactical's forearm brace with SIG Sauer's MPX and MCX pistols, and that SIG Sauer now sells its own brace with these pistols. The products are aimed at the same customers with almost pinpoint accuracy.

Although the parties are direct competitors, I do not find that this factor weighs against a stay to such a degree that it outweighs the other two factors. This is for two reasons. First,

---

[7] I consider the products to be similar inasmuch as both parties describe them as forearm-gripping stabilizer attachments for handguns. I note this similarity without making any determinations on the merits of the infringement claims.

I note that SB Tactical did not request a preliminary injunction in this case. While failure to seek a preliminary injunction is not, in and of itself, reason to completely disregard concerns about prejudice, it is evidence of how serious SB Tactical takes those concerns. See E.I. Du Pont De Nemours & Co. v. MacDermid Printing Sols. LLC, CIV. A. No. 10-3409 MLC, 2012 WL 2995182, at *4 (D.N.J. July 23, 2012) ("While the Court appreciates [plaintiff]'s concern that [defendant] will continue to sell its allegedly infringing product during the course of the stay, thereby further eroding [plaintiff]'s market share and resulting in substantial loss of profits and goodwill, the Court notes that [plaintiff] did not seek a preliminary injunction in this matter.").

Second, many of the cases cited by SB Tactical that give great weight to competition concerns are from the inter partes reexamination era, when stays might have lasted years. See, e.g., Kaneka Corp. v. JBS Hair, Inc., No. 3-10-CV-1430-P-BD, 2012 WL 10464130, at *1 (N.D. Tex. Apr. 27, 2012) ("[T]he PTO estimates the average pendency of an inter partes reexamination at just over three years. . . . Other evidence suggests that the reexamination process can take more than six years."); EMG Tech., LLC v. Apple, Inc., No. 6:09 CV 367, 2010 WL 10029483, at *2 (E.D. Tex. Nov. 15, 2010) ("[Plaintiff] would be unduly prejudiced if the Court were to grant the stay because a stay

I note that SB Tactical did not request a preliminary injunction in this case. While failure to seek a preliminary injunction is not, in and of itself, reason to completely disregard concerns about prejudice, it is evidence of how serious SB Tactical takes those concerns. See E.I. Du Pont De Nemours & Co. v. MacDermid Printing Sols. LLC, CIV. A. No. 10-3409 MLC, 2012 WL 2995182, at *4 (D.N.J. July 23, 2012) ("While the Court appreciates [plaintiff]'s concern that [defendant] will continue to sell its allegedly infringing product during the course of the stay, thereby further eroding [plaintiff]'s market share and resulting in substantial loss of profits and goodwill, the Court notes that [plaintiff] did not seek a preliminary injunction in this matter.").

Second, many of the cases cited by SB Tactical that give great weight to competition concerns are from the inter partes reexamination era, when stays might have lasted years. See, e.g., Kaneka Corp. v. JBS Hair, Inc., No. 3-10-CV-1430-P-BD, 2012 WL 10464130, at *1 (N.D. Tex. Apr. 27, 2012) ("[T]he PTO estimates the average pendency of an inter partes reexamination at just over three years. . . . Other evidence suggests that the reexamination process can take more than six years."); EMG Tech., LLC v. Apple, Inc., No. 6:09 CV 367, 2010 WL 10029483, at *2 (E.D. Tex. Nov. 15, 2010) ("[Plaintiff] would be unduly prejudiced if the Court were to grant the stay because a stay

would effectively prevent [plaintiff] from enforcing its patent rights for as long as [six to seven] years."). Here, the stay may be as brief as five months, and in no event is it likely to last beyond July 2021. SB Tactical's concerns about competition, while real, are not so great as to outweigh the other factors I must consider. See Karma, Inc. v. Allied Mach. & Eng'g Corp., No. 4:10-CV-00568-SMR-RAW, 2013 WL 12082496, at *3 (S.D. Iowa Jan. 29, 2013) ("[T]he present suit involves competing products [and w]hile the potential for prejudice may exist, it is not clear that [plaintiff] would be unduly prejudiced, as the factor requires.") (emphasis in original).

SB Tactical also raises more generalized prejudice concerns, such as the likelihood that "witnesses may become unavailable, their memories may fade, and evidence may be lost." Doc. No. 69 at 13. However, "[s]peculation that evidence will be lost, without more, is insufficient to demonstrate undue prejudice." Evolutionary Intelligence, LLC v. Millenial Media, Inc., No. 5:13-cv-04206-EJD, 2014 WL 2738501, at *6 (N.D. Cal. June 11, 2014); see also PersonalWeb v. Apple, 69 F. Supp. 3d at 1029 ("Courts have repeatedly found no undue prejudice unless the patentee makes a specific showing of prejudice beyond the delay necessarily inherent in any stay."); Canatelo, 2014 WL 2533407, at *2 (rejecting generic prejudicial "horrors" cited by plaintiff because "[i]t is not enough for Plaintiff to show

prejudice; rather, any prejudice must be undue.") (emphasis in original). Ultimately, I conclude that this factor weighs against granting a stay.

## IV. CONCLUSION

Two of the three factors (including the "most important factor," IOENGINE, 2019 WL 3943058, at *8) weigh in favor of granting a stay. SIG Sauer's motion to stay proceedings (Doc. No. 68) is, therefore, granted. All pending deadlines established in the discovery plan approved on September 30, 2019 are stayed. Within seven days of the PTO's institution decision, the parties are ordered to file a joint case management statement apprising the court of the PTO's decision and requesting such further relief as may be appropriate.

SO ORDERED.

/s/ Paul J. Barbadoro  
Paul J. Barbadoro  
United States District Judge

March 24, 2020

cc: Brittany J. Maxey-Fisher, Esq.  
Samuel E. Cooley, Esq.  
William R. Brees, Esq.  
Jason M. Ellison, Esq.  
Leslie C. Nixon, Esq.  
Raeann Warner, Esq.  
Eric G. J. Kaviar, Esq.  
Helena C. Rychlicki, Esq.  
Laura L. Carroll, Esq.