# EXHIBIT 2

(IPR institution decision
for U.S. Patent No. 9,354,021)

Trials@uspto.gov                                    Paper 10
571-272-7822                                  Date:  June 25, 2020

UNITED STATES PATENT AND TRADEMARK OFFICE

———————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————————

SIG SAUER INC.,
Petitioner,

v.

NST GLOBAL, LLC,
Patent Owner.

———————————

IPR2020-00424
Patent 9,354,021 B2

———————————

Before PATRICK R. SCANLON, JAMES J. MAYBERRY, and
ALYSSA A. FINAMORE, *Administrative Patent Judges.*

MAYBERRY, *Administrative Patent Judge.*

DECISION
Granting Institution of *Inter Partes* Review
*35 U.S.C. § 314*

## I.   INTRODUCTION

### A.   *Background and Summary*

SIG SAUER, Inc. ("Petitioner"), filed a Petition ("Pet.") requesting
*inter partes* review of claims 1–5 (the "Challenged Claims") of U.S. Patent
No. 9,354,021 B2 (Ex. 1001, the "'021 patent").  Paper 1.  Patent Owner,
NST Global, LLC, dba SB Tactical, filed a Preliminary Response ("Prelim.

IPR2020-00424
Patent 9,354,021 B2

Resp.") to the Petition.  Paper 9.  We have authority under 35 U.S.C. § 314
to determine whether to institute review.  *See also* 37 C.F.R. § 42.4(a)
(permitting the Board to institute trial on behalf of the Director).

To institute an *inter partes* review, we must determine that the
information presented in the Petition shows "a reasonable likelihood that the
petitioner would prevail with respect to at least 1 of the claims challenged in
the petition."  35 U.S.C. § 314(a).  For the reasons set forth below, upon
considering the Petition, Preliminary Response, and evidence of record, we
institute an *inter partes* review.

### B.  Real Parties in Interest

Petitioner identifies itself, "its parent company SIG SAUER US
Holding LP, and that company's parent companies, L&O Finance GmbH
and SIG SAUER Management LLC" as real parties in interest.  Pet. 26.
Patent Owner identifies itself as the sole real party in interest.  Paper 6, 1.

### C.  Related Matters

Petitioner identifies *NST Global, LLC v. Ewer Enterprises LLC*, No.
8:16-cv-02404 (M.D. Fla.), *NST Global, LLC v. SIG SAUER Inc.* No. 1:19-
cv-00121 (D. Del.), *NST Global, LLC v. SIG SAUER Inc.*, No. 1:19-cv-
00792 (D. N.H.), and *NST Global, LLC v. Strike Industries*, No. 8-18-cv-
01664 (C.D. Cal.), as matters related to the '021 patent.  Pet. 26–27.
Petitioner also identifies an *inter partes* review petition (IPR2020-00423)
challenging U.S. Patent No. 8,869,444 B2 (the "'444 patent"), a patent
related to the '021 patent.  *Id.* at 27.

Patent Owner identifies civil action No. 1:19-cv-00792 and the *inter
partes* review challenging the '444 patent as the only related matters.
Paper 6, 1.

IPR2020-00424
Patent 9,354,021 B2

### D.  The '021 Patent

The '021 patent, titled "Forearm-Gripping Stabilizing Attachment for a Handgun," issued May 31, 2016, from an application filed October 20, 2014, and claims priority to a provisional application, filed November 27, 2012.  Ex. 1001, codes (54), (45), (22), (60), 1:7–12.  The application that matured into the '021 patent is purportedly a continuation of an application that is a continuation of the application that matured into the '444 patent.  *Id.* at code (63).

The '021 patent is directed "to a forearm-gripping stabilizing attachment for a handgun that secures to a rearward end of the handgun frame and engages a user's forearm."  Ex. 1001, 1:17–20.  We reproduce Figures 1 and 2 from the '021 patent below.



FIG. 1                    FIG. 2

Figure 1 depicts "a side elevation view of the forearm-gripping stabilizing attachment for a handgun . . ., illustrating the stabilizing attachment in use and attached to a handgun."  Ex. 1001, 2:54–58.  Figure 2 depicts "a partial rear elevation view of the forearm gripping stabilizing attachment for a handgun of F[igure] 1."  *Id.* at 2:59–60.  Stabilizing

IPR2020-00424
Patent 9,354,021 B2

attachment 10 includes unitary body 14 having upper body portion 20 and lower body portion 22. *Id.* at 3:40–48.

Upper body portion 20 includes passage 24 that, in the embodiment of Figure 1, extends completely through upper body portion 20. Ex. 1001, 3:54–56; *cf. id.* at Fig. 4 (depicting passage 24 not extending completely through upper body portion 20). "Passage 24 provides for the telescopic insertion of a portion of . . . handgun 12 therein to secure or mount the stabilizing attachment 10 to the handgun." *Id.* at 3:56–59. Passage 24 may retain buffer tube 26[1] by friction. *Id.* at 4:3–6.

Lower body portion 22 includes opposed flaps 28, 30. Ex. 1001, 4:7–8. The flaps are spaced to form gap 32, which receives a user's forearm 34. *Id.* at 4:9–12. "Flaps 28 and 30, being of the semi-rigid elastomeric material, conform to the user's forearm 34." *Id.* at 4:12–14.

Strap 36 encircles flaps 28, 30 and the user's forearm to secure stabilizing attachment 10 to the user. Ex. 1001, 4:18–20. The strap of Figure 1 encircles the flaps but not passage 24. *Id.* at 4:23–25, Figs. 1, 2. Other embodiments describe other strap configurations, including configurations that encircle the flaps and passage 24. *See, e.g., id.* at Figs. 5, 6 (depicting strap 36 encircling flaps 28, 30 and passage 24).

E.   *Illustrative Claims*

Of the Challenged Claims, claims 1, 3, and 5 are independent claims. Ex. 1001, 6:12–27, 31–46, 49–60. Claim 1, reproduced below, is representative.

---

[1] The '021 patent also associates reference numeral "16" with the buffer tube. *See* Ex. 1001, 4:4–6. We understand from the figures and description that item "16" is the forward end of body 14 and item "26" is the buffer tube. *See id.* at 3:43–44, 3:59–61, Fig. 1.

IPR2020-00424
Patent 9,354,021 B2

> 1.     A forearm-gripping stabilizing attachment for a handgun, the handgun having a support structure extending rearwardly from the rear end of the handgun, the forearm-gripping stabilizing attachment, comprising:
>
>> a body having a front end, a rear end, an upper portion, a lower portion, and a passage longitudinally extending within said upper portion and at least through said front end of said body, the support structure of the handgun being telescopically receivable by said passage;
>>
>> said lower portion having at least one flap extending from said upper portion;
>>
>> a strap connected to said body, said strap securing said at least one flap to a user's forearm when the stabilizing attachment is secured to a user's forearm; and
>>
>> wherein said passage extends entirely through said body between said front end and said rear end of said body.

*Id.* at 6:12–27.  Claim 3 differs from claim 1 in that it recites a support structure in the body of the claim, with the support structure being a buffer tube, and does not require the passage to extend entirely through the body or the support structure to be telescopically received.  *Id.* at 6:31–46.  Claim 5 recites similar subject matter as claim 3, but without reciting certain requirements for the body.  *Id.* at 6:49–60.

### F.  Prior Art and Asserted Grounds

Petitioner asserts that the Challenged Claims are unpatentable based on four grounds:

| Claims Challenged | 35 U.S.C. § | References/Basis |
|---|---|---|
| 1–5 | 103(a) | Forjot[2] |
| 1–5 | 103(a) | Forjot, Baricos[3] |
| 1–5 | 103(a) | Forjot, Morgan[4] |

[2] Forjot, FR 899,565, published June 5, 1945 (Ex. 1008, "Forjot").  Exhibit 1008 is a certified English translation of Exhibit 1007.  *See* Ex. 1008, 1.

[3] Baricos, et al., US 5,852,253, issued December 22, 1998 (Ex. 1009, "Baricos").

[4] Morgan, US 6,016,620, issued January 25, 2000 (Ex. 1010, "Morgan").

IPR2020-00424
Patent 9,354,021 B2

| Claims Challenged | 35 U.S.C. § | References/Basis |
|---|---|---|
| 1–5 | 103(a) | Forjot, Deckard[5] |

Petitioner relies on the declaration testimony of Mr. John Nixon. Ex. 1002.  Patent Owner relies on testimony from Dr. Joshua Harrison. Ex. 2001.

The following subsections provide a brief description of the asserted prior art references.

*1.  Forjot*

Forjot, titled "Cuff and stabilizing plate to improve the use and firing of underwater weapons," published June 5, 1945 from a grant on August 28, 1944.  Ex. 1008, 1.[6]  We reproduce Forjot's Figures 1 and 2, below.



Figure 1 (a portion of which is reproduced above), depicts "the respective positions of the cuff on the stabilization plate on an underwater pistol or rifle."  Ex. 1008, 1:45–47.  Figure 2 depicts "a front view of the cuff."  *Id.* at 1:48.  Cuff 1, "preferably made of stainless steel and of a suitable thickness to obtain a certain elasticity . . . is intended to make [a] weapon integral with the arm" of a user.  *Id.* at 2:3–6.

---

[5] Deckard, US 3,793,759, issued February 26, 1974 (Ex. 1011, "Deckard").
[6] We refer to the page number of the patent disclosure of Exhibit 1008 (which has two pages of disclosure and three pages of drawings) when referencing Forjot.  Page 1 of the patent appears on page 2 of Exhibit 1008, with page 1 being the translator's declaration.  When appropriate, we also include the line numbers in our citation, in the form page:lines.

IPR2020-00424
Patent 9,354,021 B2

Cuff 1 is attached to butt 5 of the gun through tube 2 and joint 6.
Ex. 1008, 2:6–11.  Screw 3 is used to tighten cuff 1 to tube 2 and to adjust
opening 4.  *Id.* at 2:6–9.

*2.  Baricos*

Baricos, titled "Personal Firearm System," issued December 22, 1998.
Ex. 1009, codes (54), (45).  We reproduce Baricos's Figures 1 and 2, below.



Figure 1 depicts "a diagrammatic perspective view of a firearm
system in accordance with [Baricos's] invention carried beneath the forearm
of a user," and Figure 2 depicts "a diagrammatic longitudinal axial section
view of a firearm system."  Ex. 1009, 1:54–58.  Relevant to our analysis,

IPR2020-00424
Patent 9,354,021 B2

Baricos's firearm system includes forearm or elbow cradle 230 having strap 232. *Id.* at 2:36–37, 2:47–49. "[S]trap 232 [is] designed to surround the user's forearm, in front of the elbow, as can be seen in F[igure] 1." *Id.* at 2:48–49.

### 3. *Morgan*

Morgan, titled "Arm and Hand Gun Support Apparatus," issued January 25, 2000. Ex. 1010, codes (54), (45). Morgan is directed to "a support that is mounted onto the arm to steady the aim of a hand gun user." *Id.* at 1:9–10. We reproduce Morgan's Figures 1, 7, and 8, below.



Figure 1 depicts "a perspective illustration of the preferred embodiment of [Morgan's] arm and hand gun support apparatus." Ex. 1010, 3:52–53. Figures 7 and 8 depict "a frontal view of the wrist support" and "a frontal view of the forearm support," respectively. *Id.* at 4:1–2. Wrist support 136 and forearm support 138 are made of a rigid plastic. *Id.* at 5:51–53. Each support includes a pair of straps 142, with one end of the strap (end 146) attached to the support and the other end (end 144) having fastener 152. *Id.* at 5:53–58.

8

IPR2020-00424
Patent 9,354,021 B2

### 4.  *Deckard*

Deckard, titled "Concealed Pistol Mounting," issued February 26, 1974.  Ex. 1011, codes (54), (45).  We reproduce Deckard's Figures 1 and 4, below.



Figure 1 depicts "a front view of [Deckard's] device in the released mode."  Ex. 1011, 1:45–46.  Figure 4 depicts a "cross-section of the device taken at line 4—4 of F[igure] 1."  Relevant to our analysis, mounting unit 10 includes straps 13, 14, which fasten mounting unit 10 to forearm 26, by encircling the user's arm.  *Id.* at 1:61–62.

## II.  ANALYSIS

### A.  *Applicable Law*

Petitioner's asserted grounds of unpatentability are based on obviousness under 35 U.S.C. § 103(a).

> Section 103(a) forbids issuance of a patent when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007).  The question of obviousness is resolved on the basis of underlying factual determinations, including:  (1) the scope and content of the prior art; (2) any differences between the claimed subject matter and the prior art; (3) the level of ordinary skill in the art; and (4) when available, objective evidence, such as

9

IPR2020-00424
Patent 9,354,021 B2

commercial success, long felt but unsolved needs, and failure of others.

*Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966).

"[O]bviousness must be determined in light of *all the facts*, and . . . a given course of action often has simultaneous advantages and disadvantages, and this does not necessarily obviate motivation to combine" teachings from multiple references. *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1165 (Fed. Cir. 2006) (emphasis added); *see also PAR Pharm., Inc. v. TWI Pharms., Inc.*, 773 F.3d 1186, 1196 (Fed. Cir. 2014) ("The presence or absence of a motivation to combine references in an obviousness determination is a pure question of fact.").

B.    *Level of Ordinary Skill in the Art*

The level of skill in the art is "a prism or lens" through which we view the prior art and the claimed invention. *Okajima v. Bourdeau*, 261 F.3d 1350, 1355 (Fed. Cir. 2001). Petitioner contends that a person having ordinary skill in the art at the time of the invention "would typically have a bachelor's degree in mechanical engineering and 2-3 years of experience in handgun use, procurement, repair, design, or manufacturing." Pet. 9–10 (referencing Ex. 1002 ¶ 34). Patent Owner contends that the level of ordinary skill in the art pertaining to the '021 patent

> is that of a designer or experienced user of modern firearms accessories. The requisite knowledge and experience could be obtained through completion of a bachelor's degree in an engineering field, followed by some relevant experience designing or using accessories for modern firearms, for example. Alternatively, the same or an equivalent level of skill in the art could be obtained by nonprofessional firearms owners, users, or collectors who have substantial experience configuring and shooting modern firearms and related accessories, even without the benefit of any college education.

Prelim. Resp. 2 (referencing Ex. 2001 ¶ 11).

IPR2020-00424
Patent 9,354,021 B2

We understand Patent Owner to contend that the level of ordinary skill may be obtained through an engineering degree and some experience in designing or using firearm accessories and that same level of skill could, alternatively, be achieved through additional experience without having a degree.

We agree, generally, with Patent Owner that additional experience may be substituted for an engineering degree. We note, however, that phrases such as "some relevant experience" and "substantial experience" are not helpful in our analysis, as they are vague. Patent Owner does not provide any measure to what constitutes "some" or "substantial" experience.

Accordingly, for the purposes of this Decision, we determine that the level of ordinary skill in the art of the '021 patent is a bachelor's degree in mechanical (or similar type of) engineering and 2 to 3 years of experience in handgun use, procurement, repair, design, or manufacturing and that an equivalent level of skill may be obtained with additional experience without an engineering degree. This definition is consistent with the prior art of record and the skill reflected in the Specification of the '021 patent.

C.  *Claim Construction*

In *inter partes* reviews, we interpret a claim "using the same claim construction standard that would be used to construe the claim in a civil action under 35 U.S.C. 282(b)." 37 C.F.R. § 42.100(b) (2019). Under this standard, we construe the claim "in accordance with the ordinary and customary meaning of such claim as understood by one of ordinary skill in the art and the prosecution history pertaining to the patent." *Id.*

Both parties contend that no claim term needs to be construed expressly and that the terms of the Challenged Claims should be afforded their ordinary and customary meaning. Pet. 10; Prelim. Resp. 6–7. We

11

IPR2020-00424
Patent 9,354,021 B2

agree—we need not expressly construe any claim term to resolve the parties'
dispute at this stage of the proceeding, that is, whether the information in the
Petition shows a reasonable likelihood that Petitioner would prevail with
respect to at least one of the claims challenged in the Petition. *See Nidec
Motor Corp. v. Zhongshan Broad Ocean Motor Co.*, 868 F.3d 1013, 1017
(Fed. Cir. 2017).

### D. Ground 1: Claims 1–5 as Allegedly Obvious Over Forjot

Petitioner contends that Forjot, in combination with the knowledge of
a person having ordinary skill in the art, renders obvious the subject matter
of independent claims 1, 3, and 5 and dependent claims 2 and 4. Pet. 2, 15–
23. In the subsections below, we discuss the scope and content of the prior
art and any differences between the claimed subject matter and the prior art,
on a limitation-by-limitation basis. We also discuss Patent Owner's
objective evidence of nonobviousness.

#### 1. Independent claims 1, 3, and 5

##### a) Claim 1

The preamble of claim 1 recites "[a] forearm-gripping stabilizing
attachment for a handgun, the handgun having a support structure extending
rearwardly from the rear end of the handgun." Ex. 1001, 6:12–15.
Petitioner contends that Forjot's cuff corresponds to the recited forearm-
gripping stabilizing attachment and that Forjot's cuff is for a handgun.
Pet. 15–16 (referencing Ex. 1008, 2:3–7, 2:51–52; Ex. 1002 ¶¶ 45, 46).
Petitioner adds that Forjot's cuff is attached to a tube, corresponding to the
recited support structure. *Id.* (referencing Ex. 1008, 2:9–11; Ex. 1002 ¶ 47);
*see also* Ex. 1008, Fig. 1 (depicting tube 2 extending rearwardly from a
gun).

IPR2020-00424
Patent 9,354,021 B2

We have reviewed Petitioner's contentions and determine that Petitioner has made a sufficient showing, at this stage of the proceeding, that Forjot discloses the subject matter of the preamble of claim 1.  Patent Owner does not dispute Petitioner's contentions with respect to the preamble of claim 1 at this time.

Claim 1 also recites "a body having a front end, a rear end, an upper portion, a lower portion, and a passage longitudinally extending within said upper portion and at least through said front end of said body, the support structure of the handgun being telescopically receivable by said passage." Ex. 1001, 6:16–20 (the "body" limitation of claim 1).  Petitioner contends that Forjot discloses the subject matter of the "body" limitation of claim 1 and provides an annotated version of a portion of Forjot's Figure 1 in support of its contention.  Pet. 17–18 (referencing Ex. 1002 ¶ 49).  We reproduce this annotated figure, below.



This annotated figure provides a portion of Forjot's Figure 1 depicting cuff 1 and tube 2, with annotations pointing to the recited components of the recited "body."  Petitioner adds that "Fig[ure] 1 of *Forjot* also shows 'the support structure of the handgun [tube 2] telescopically receivable by said passage.'"  *Id.* at 18 (referencing Ex. 1008, 2:6–7; Ex. 1002 ¶ 50).

Patent Owner argues that Forjot does not show that tube 2 is telescopically receivable by the passage.  Prelim. Resp. 40–41.  Patent Owner argues that tube 2 "is shown in dotted lines, which does not allow for proper visual identification of its features."  *Id.* at 40.  Patent Owner adds that Forjot describes cuff 1 as being "attached to the rear end of" tube 2.  *Id.* at 40–41 (referencing Ex. 2001 ¶¶ 23–24).

We have considered Patent Owner's argument, but do not find it sufficient, at this stage of the proceeding, to demonstrate a deficiency in Petitioner's position.  As Patent Owner recognizes, tube 2 is shown with dashed lines in Forjot's Figure 1.  *See* Ex. 1008, Fig. 1; *see also id.* at 1:45–47 (indicating that Figure 1 shows "an underwater pistol or rifle . . . by dashed lines").  Forjot's Figure 1 shows the dashed lines continuing inside of the alleged passage of cuff 1.  *See id.* at Fig. 1.  Also, Forjot does not merely state that cuff 1 is attached to the rear end of tube 2, as Patent Owner argues; Forjot discloses that tube 2 is attached to cuff 1 by tightening screw 3, which also adjusts opening 4.  *Id.* at 2:6–9, Fig. 2.  As can be seen in Figures 1 and 2, tube 2 would need to extend into the upper portion of cuff 1 to be secured by screw 3.

We determine that Petitioner has made a sufficient showing, at this stage of the proceeding, that Forjot discloses the subject matter of the "body" limitation of claim 1.

Claim 1 also recites "said lower portion having at least one flap extending from said upper portion."  Ex. 1001, 6:21–22 (the "lower portion" limitation).  Petitioner contends that Forjot's cuff 1 "has a pair of spaced flaps."  Pet. 18 (referencing Ex. 1008, Fig. 2; Ex. 1002 ¶¶ 51–52); *compare* Ex. 1008, Fig. 2 (showing a view of cuff 1 from the front of the cuff) *with*

IPR2020-00424
Patent 9,354,021 B2

Ex. 1001, Fig. 2 (showing a view of an exemplary embodiment having a bifurcated lower portion that defines flaps).

Patent Owner contends, "a person of ordinary skill in the art would not be motivated to modify the cuff taught by *Forjot* by removing a flap from the cuff."  Prelim. Resp. 40.  Patent Owner argues that removing one of Forjot's flaps would render cuff 1 inoperable for its intended purpose.  *Id.* at 38–39.

We have considered Patent Owner's argument, but do not find it sufficient, at this stage of the proceeding, to demonstrate a deficiency in Petitioner's position.  Patent Owner's argument misconstrues claim 1 and Petitioner's position.  Claim 1 requires the lower portion of the body to have *at least one* flap extending from the upper portion of the body.  Ex. 1001, 6:21–22.  As such, this requirement is met if the lower portion of the body has one flap or more than one flap.  Petitioner contends that Forjot's cuff 1 has *two* flaps, that is, *at least one* flap, extending from the upper portion of the body.  Pet. 18.  We do not understand Petitioner to propose to modify cuff 1 by removing one of the flaps.

We determine that Petitioner has made a sufficient showing, at this stage of the proceeding, that Forjot discloses the subject matter of the "lower portion" limitation of claim 1.

Claim 1 also recites "wherein said passage extends entirely through said body between said front end and said rear end of said body."  Ex. 1001, 6:26–27 (the "wherein" clause of claim 1).  Petitioner contends that Forjot's Figure 2 depicts a passage extending entirely through the body.  Pet. 21 (referencing Ex. 1008, Fig. 2; Ex. 1002 ¶¶ 49, 57).  In his declaration, Mr. Nixon annotates Forjot's Figure 1 to identify the passage, which shows

15

IPR2020-00424
Patent 9,354,021 B2

dashed lines (representing tube 2 within the identified passage) extending the length of the passage.  Ex. 1002 ¶ 49; Ex. 1008, Fig. 1.

Patent Owner argues that Forjot's Figure 2 cannot show the longitudinal extent of its passage.  Prelim. Resp. 43–44.  Patent Owner argues that the cross section of tube 2 obscures the extent of the passage.  *Id.* at 44.

We have considered Patent Owner's argument, but do not find it sufficient, at this stage of the proceeding, to demonstrate a deficiency in Petitioner's position.  Forjot does not depict tube 2 in solid form, but instead uses dashed lines to show the tube in phantom form.  *See* Ex. 1008, Fig. 1 (depicting dashed lines of tube 2 extending the length of cuff 1); *see also id.* at 1:45–47 (indicating that Figure 1 shows "an underwater pistol or rifle . . . by dashed lines").  Also, Petitioner relies on Figure 1 (and its annotations by Mr. Nixon) in addition to Figure 2.

We determine that Petitioner has made the requisite showing, at this stage of the proceeding, that Forjot discloses the subject matter of the "wherein" clause of claim 1.

Finally, claim 1 recites "a strap connected to said body, said strap securing said at least one flap to a user's forearm when the stabilizing attachment is secured to a user's forearm."  Ex. 1001, 6:23–25 (the "strap" limitation).  Petitioner acknowledges that Forjot does not disclose the recited strap.  Pet. 18.  Petitioner contends that "[u]sing straps to secure a firearm support to a user's forearm, however, was known and obvious at the time the '021 patent was filed."  *Id.* at 18–19 (referencing Ex. 1002 ¶ 53).

Mr. Nixon declares that "[s]traps have been used in firearms throughout history."  Ex. 1002 ¶ 40.  Mr. Nixon explains that "[r]ifle shooters are trained to wrap their rifle sling (strap) around their support arm

16

IPR2020-00424
Patent 9,354,021 B2

(left arm for a right handed shooter) to enhance the support that they give to the rifle, thereby minimizing perturbations, and maximizing accuracy." *Id.*; *see also* Ex. 1013 (U.S. Marine Corp. Rifle Marksmanship manual).

Further in support of its position, Petitioner argues that the '021 patent Specification "acknowledges" that straps to secure a firearm support to a user's forearm were known and obvious, with the Specification stating, "[o]ne of ordinary skill in the art will readily appreciate the function of strap 36 and recognize many suitable arrangements for the purpose of securing the body 14 about a user's forearm." Pet. 19 (quoting Ex. 1001, 4:26–29).

Petitioner reasons that

> *Forjot* is concerned with the same goal as the '021 patent, *i.e.*, to stabilize and aim a handgun. Adding a strap to further secure the user's forearm within the flaps of *Forjot* would have been obvious to one having ordinary skill in the art because it was well known to use straps in general to mechanically secure one element to another, and the use of straps to secure guns and gun supports to a user were notoriously well known.
>
> It would have been a simple task to add a strap to *Forjot*. . . .
>
> The use of straps to secure firearms has been known for centuries and the stated goal of *Forjot* is to "rigidly hold the forearm." The motivation for the modification is suggested by *Forjot* and the added strap is being used for its known purpose. . . . This is simply using a well-known structure in a well-known way and therefore is obvious.

Pet. 19–20 (citations omitted) (referencing Ex. 1002 ¶¶ 54–55; Ex. 1008, 2:57).

Patent Owner argues that modifying Forjot by adding a strap would render Forjot inoperable for its intended purpose. Prelim. Resp. 35–38. Patent Owner argues that the intended purpose is "preventing injury to a hunter by providing for quick release and allowing for easy and quick

IPR2020-00424
Patent 9,354,021 B2

engagement." *Id.* at 35 (referencing Ex. 2001 ¶¶ 12–13, 19–21).  Patent Owner adds, "*Forjot* expressly confirms that 'quick release' is a feature generally desired by spear hunters." *Id.* at 36; *see also* Ex. 1008, 1:5–16. Patent Owner argues, "if the hunter's forearm can be easily and quickly engaged in the cuff by bending, the hunter's forearm can also be quickly and easily disengaged from the cuff by bending," illustrating the quick-release nature of Forjot's cuff.  Prelim. Resp. 36 (referencing Ex. 2001 ¶ 20).

We have considered Patent Owner's argument, but do not find it sufficient, at this stage of the proceeding, to demonstrate a deficiency in Petitioner's position.  We recognize that combinations that render a prior art apparatus "inoperable for its intended purpose," may fail to support a conclusion of obviousness.  *In re Gordon*, 733 F.2d 900, 902 (Fed. Cir. 1984).  On the current record, we determine that Patent Owner too narrowly defines Forjot's intended purpose.  Instead, we preliminarily determine that Forjot's intended purpose is to "give [an] underwater pistol and rifle the rigidity sought after to ensure aim, but . . . without using the shoulder" or "make [a] weapon integral with the arm."  Ex. 1008, 1:32–36, 2:5–6.

Also, we are not convinced, on the current record, of Patent Owner's reading of the phrase "quick release" in Forjot.  We reproduce the first three sentences from the paragraph of interest from Forjot, below.

> Up until now, an underwater weapon could only be used by launching a projectile which is always connected to the weapon by a link.  To maximize the possibility of capturing the prey, it is necessary to approach it as closely and as quickly as possible, which constitutes a difficulty, because in water, all movements performed are slower than in air.  These inevitable conditions have led specialists of this type of hunting to use weapons that are small, compact, quick release, and yet sufficiently accurate when hunting to quickly secure the prey,

IPR2020-00424
Patent 9,354,021 B2

> even if of a small size, but despite successful achievements, the
> hazards of hunting remain constant.

Ex. 1008, 1:5–16.  We discern nothing from this disclosure to suggest that

"quick release" means to release a weapon attached to a user quickly.  This

language is discussing the prior art, which encompassed rifles that are

shouldered by the user or pistols supported by the user's wrist and, as such,

are not connected to the user and would not need any quick release feature.

*See id.* at 1:17–31.  We preliminarily determine, on the limited record before

us, that another likely reading of Forjot's "quick release" language is the

quick release of the projectile, since the hunter must "quickly secure the

prey."  *See id.* at 1:11–16.  Also weighing against Patent Owner's reading of

Forjot is the fact that Forjot's invention uses screw 3 to reduce opening 4

when the user's arm engages cuff 1.  Ex. 1008, 2:5–9.  As such, once

screw 3 is tightened, cuff 1 would not be as easily disengaged as it is

engaged on the hunter's forearm, contrary to Patent Owner's argument.

Patent Owner next contends that using straps to secure a firearm

support was not known and obvious.  Prelim. Resp. 41.  Patent Owner

criticizes Petitioner's reliance of language from the Specification (Ex. 1001,

4:26–29, which we quote, above).  *Id.*  Although we agree with Patent

Owner, on the limited record before us, that the language in the '021 patent

relied upon by Petitioner does not amount to an admission that using straps

to secure a firearm support was known and obvious, we determine that

Patent Owner's argument is not sufficient, at this stage of the proceeding, to

demonstrate a deficiency in Petitioner's position as a whole.

Also, we find Patent Owner's contentions directed to the use of slings

inapposite.  *See* Prelim. Resp. 43.  In the prosecution history for the

IPR2020-00424
Patent 9,354,021 B2

'444 patent, relied on by Patent Owner, the examiner identified Johnson's[7] buttstock sling as the recited body, not the strap.  Ex. 2006, 65–66.  Because the examiner never considered Forjot, we cannot conclude, on the record before us, that the examiner would not have considered the combination of Johnson's strap and Forjot's cuff.

We determine that Petitioner has made a sufficient showing, on the current record, that its proposed modification employs a known structure (a strap) for its established function.  *See* Pet. 13–15, 20; *cf. KSR Int'l Co.*, 550 U.S. at 417 ("[A] court must ask whether the improvement is more than the predictable use of prior art elements according to their established functions.").  Also, based on the current record, we determine the prior art of record supports Petitioner's position that it was known to use straps to secure a gun to a user's forearm.  *See, e.g.*, Ex. 1009, Fig. 1 (depicting a strap used to secure a user's forearm to a weapon); Ex. 1010, Figs. 1, 7, 8 (using straps to secure a support structure for a gun to a user's forearm); Ex. 1011, Fig. 1 (same); *see also* Pet. 13–15 (discussing strap references).

Patent Owner presents objective evidence that purports to demonstrate a long-felt, yet unresolved, need for the invention; industry praise; commercial success; skepticism in the industry for the invention; copying; and licensing.  Prelim. Resp. 59–66.  We must always consider, as part of an obviousness inquiry, this type of objective evidence, or secondary considerations evidence, when present.  *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1349 (Fed. Cir. 2012).  Notwithstanding what the teachings of the prior art would have suggested to one with ordinary skill in the art at the time of the patent's

---

[7] Johnson, US 7,059,502 B2, issued June 13, 2006 ("Johnson").

IPR2020-00424
Patent 9,354,021 B2

invention, the totality of the evidence submitted, including objective evidence of nonobviousness, may lead to a conclusion that the challenged claims would not have been obvious to one with ordinary skill in the art. *In re Piasecki*, 745 F.2d 1468, 1471–72 (Fed. Cir. 1984). Secondary considerations may include long-felt but unsolved need, failure of others, unexpected results, commercial success, copying, licensing, and praise. *See Graham*, 383 U.S. at 17–18; *Leapfrog Enters., Inc. v. Fisher–Price, Inc.*, 485 F.3d 1157, 1162 (Fed. Cir. 2007).

"For objective evidence to be accorded substantial weight, its proponent must establish a nexus between the evidence and the merits of the claimed invention." *In re GPAC Inc.*, 57 F.3d 1573, 1580 (Fed. Cir. 1995). The Board uses a two-step analysis in evaluating nexus between the claimed invention and objective evidence. *Lectrosonics, Inc. v. Zaxcom, Inc.*, IPR2018-01129, Paper 33 at 33 (PTAB Jan. 24, 2020) (precedential). We first consider whether the patent owner has demonstrated "that its products are coextensive (or nearly coextensive) with the challenged claims," resulting in a rebuttable presumption of nexus. *Id.* If not, that "does not end the inquiry into secondary considerations"; "the patent owner is still afforded an opportunity to prove nexus by showing that the evidence of secondary considerations is the 'direct result of the unique characteristics of the claimed invention.'" *Id.* (quoting *Fox Factory, v. SRAM, LLC*, 944 F.3d 1366, 1373–75 (Fed. Cir. 2019)). The patent owner may do so by demonstrating that the objective evidence is the result of some aspect of the claim (not already in the prior art) or the claimed combination as a whole. *Id.* (citing *In re Kao*, 639 F.3d 1057, 1068–69 (Fed. Cir. 2011); *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1331 (Fed. Cir. 2016)).

21

IPR2020-00424
Patent 9,354,021 B2

At this stage of the proceeding, we determine, based on the current record, Patent Owner's objective evidence is entitled to very little weight. Patent Owner does not provide any evidence to demonstrate a nexus between the claimed invention and the purported objective evidence. *See, e.g.*, Prelim. Resp. 60–61 (stating that the product introduced in 2013 was "based on and including each of the claimed elements of the '444 Patent and the '021 Patent," but offering no evidence to demonstrate how the product corresponds to the limitations of a claim in the '021 patent), 62 (stating that a product allegedly praised by consumers and reviewers was "based on the '444 Patent and the '021 Patent," but not demonstrating that the product was co-extensive or nearly co-extensive with any claim of the '021 patent). Also, Petitioner has not had an opportunity to present evidence in rebuttal to Patent Owner's contentions with respect to the objective evidence. As such, we do not have the benefit of a complete record to make a determination as to whether Patent Owner has presented sufficient evidence of secondary considerations to outweigh Petitioner's evidence in support of this obviousness ground.

In conclusion, for the reasons provided above, we determine, on the current record, that the information in the Petition demonstrates a reasonable likelihood Petitioner would prevail in its contention that claim 1 is unpatentable under 35 U.S.C. § 103(a) over Forjot.

b)  *Claims 3 and 5*

Petitioner and Patent Owner address certain limitations of claims 3 and 5 together with comparable limitations in claim 1.  *See* Pet. 15–20; Prelim. Resp. 35–43.  For the reasons provided above, in connection with our analysis of claim 1, we determine, on the current record, that Petitioner makes the requisite showing, at this stage of the proceeding, that Forjot

IPR2020-00424
Patent 9,354,021 B2

discloses this common subject matter or a person having ordinary skill in the art would have modified Forjot to arrive at the subject matter. We address a limitation specific to claims 3 and 5, below.

Both claims 3 and 5 require "said support structure [to be] a buffer tube." Ex. 1001, 6:46, 6:60. Petitioner contends that Forjot's tube 2 corresponds to the recited buffer tube. Pet. 20.

Patent Owner argues that "[o]ne of ordinary skill in the field of firearms and firearms accessories would recognize 'buffer tube' to be a term of art." Prelim. Resp. 45 (referencing Ex. 2001 ¶ 26). Patent Owner continues that the term "buffer tube" "refers specifically to a component of a firearm that houses the firearm's sliding buffer and buffer spring components." *Id.* (referencing Ex. 2001 ¶ 26). Patent Owner concludes, "[n]o tube that is unrelated to the foregoing bolt return function can be properly understood to be a 'buffer tube.'" *Id.* (referencing Ex. 2001 ¶ 26).

We note that neither party offered an express construction for the term "buffer tube," (including evidence, other than declaration evidence by Dr. Harrison,[8] as to the ordinary and customary meaning of the term "buffer tube") nor does the '021 patent Specification provide a definition of "buffer tube." We will address these limitations of claims 3 and 5 on the complete trial record, including any claim construction analysis for the term "buffer tube," to the extent included in the record.

---

[8] We give little weight to Dr. Harrison's testimony at this stage of the proceeding, as he provides no support for his testimony and Petitioner has not had the opportunity to respond to this testimony. *See* 37 C.F.R. 42.65(a) ("Expert testimony that does not disclose the underlying facts or data on which the opinion is based is entitled to little or no weight.").

IPR2020-00424
Patent 9,354,021 B2

   c)   *Dependent claims 2 and 4*

Dependent claims 2 and 4 depend from independent claims 1 and 3,
respectively, and require, in relevant part, that the flaps be made of an
elastomeric material.  Ex. 1001, 6:28–30 (claim 2), 6:47–48 (claim 4).
Petitioner argues, "it would have been obvious to use known elastomeric
materials" given Forjot's teaching that its cuff "obtain[s] a certain elasticity"
to receive a user's arm.  Pet. 21–22 (referencing Ex. 1008, 2:4–5; Ex. 1002
¶ 59).

Petitioner also argues that Morgan discloses that its forearm supports
are made of plastic.  Pet. 22 (referencing Ex. 1010, 5:53; Ex. 1002 ¶ 60).
Petitioner argues that "[p]lastics having elasticity include 'elastomeric
materials,' and the use of elastomeric materials for forearm accessories was
well known in the art."  *Id.* (referencing Ex. 1002 ¶ 63; Ex. 1012, 4:6–10).
Petitioner reasons that "[u]sing elastomeric materials instead of a metal
having elastic properties is a 'mere substitution of one element for another
known in the field' to 'yield a predicable result' and therefore is obvious."
*Id.* (quoting *KSR Int'l Co.*, 550 U.S. at 416).  Petitioner argues that "[a]rmed
with the teaching in *Forjot* that the cuff has a 'certain elasticity,' one skilled
in the art would have been taught by *Forjot* and *Morgan* to use elastomeric
materials for the cuff of *Forjot*."  *Id.* at 24 (referencing Ex. 1002 ¶ 63).
Petitioner adds that "[s]uch a choice could have been motivated by the cost
or availability of materials, ease of manufacture, user comfort, or the more
resilient characteristics of elastomers versus stainless steel."  *Id.* at 22–23
(referencing Ex. 1002 ¶ 62).

Patent Owner argues that Forjot's cuff is made of metal and metal is
not an elastomeric material.  Prelim. Resp. 46–47 (referencing Ex. 2001
¶ 38).  Patent Owner adds that Forjot discloses that its cuff "form[s] a clamp

24

IPR2020-00424
Patent 9,354,021 B2

to **rigidly** hold the forearm of the hunter." *Id.* (quoting Ex. 1008, 2:56–58).

Patent Owner argues that this express disclosure for rigidity teaches away

from using elastomeric materials. *Id.* at 47 (referencing Ex. 2001 ¶ 39).

Patent Owner also argues that Morgan does not disclose forearm supports

made of an elastomeric material, as Morgan's supports are rigid plastic. *Id.*

at 48.

We understand Petitioner's position, on the limited record before us,

to be that, given the teachings in Forjot that its metal cuff requires some

flexibility and, at the time of the invention of the '021 patent, plastics were a

well-known material in the industry (as evidenced by Morgan), a person

having ordinary skill in the art would have had reason to modify Forjot to

include a flexible plastic cuff, which would be made of an elastomeric

material. *See, e.g.*, Pet. 21–23 (explaining the obviousness position as to

claims 2 and 4 based on the combined teachings of Forjot and Morgan).

We do not agree with Patent Owner, on the current record, that Forjot

teaches away from the proposed modification. "A reference may be said to

teach away when a person of ordinary skill, upon reading the reference . . .

would be led in a direction divergent from the path that was taken by the

applicant." *In re Haruna*, 249 F.3d 1327, 1335 (Fed. Cir. 2001) (quoting

*Tec Air, Inc. v. Denso Mfg. Mich. Inc.*, 192 F.3d 1353, 1360 (Fed. Cir.

1999)); *see, e.g.*, *In re Fulton*, 391 F.3d 1195, 1201 (Fed. Cir. 2004)

(holding that, to teach away, the prior art must "criticize, discredit, or

otherwise discourage the solution claimed"). We preliminarily determine

that the language in Forjot relied on by Patent Owner does not "criticize,

discredit, or otherwise discourage" the proposed modification. Also, Patent

Owner's argument ignores the entire proposed modification, which also

includes a strap to hold the cuff to the hunter's forearm.

IPR2020-00424
Patent 9,354,021 B2

Accordingly, we determine, on the current record, that the information in the Petition demonstrates a reasonable likelihood Petitioner would prevail in its contention that claims 2 and 4 are unpatentable under 35 U.S.C. § 103(a) over Forjot.

### E.  Grounds 2–4:  Claims 1–5 as Allegedly Obvious Over Forjot and Baricos, Morgan, or Deckard

Petitioner contends that Forjot, in combination with Baricos, Morgan, or Deckard, renders obvious the subject matter of independent claims 1, 3, and 5 and dependent claims 2 and 4.  Pet. 2, 23–26.  In the subsections below, we discuss the scope and content of the prior art and any differences between the claimed subject matter and the prior art, focusing on the "strap" limitation.  We addressed Patent Owner's objective evidence above, in connection with our analysis of claim 1 under Ground 1, and our analysis of Patent Owner's objective evidence is similarly applicable to Grounds 2–4.

### 1.  Independent claims 1, 3, and 5

For each of Grounds 2, 3, and 4, Petitioner incorporates its contentions with respect to Ground 1.  Pet. 23–25.  For the "strap" limitations of independent claims 1, 3, and 5, Petitioner contends that Baricos, Morgan, and Deckard disclose the subject matter of the limitation. Pet. 23–26.  With respect to Baricos, Petitioner contends that it would have been obvious to add a strap to Forjot's cuff 1 based on Baricos's teaching of strap 232 on cradle 230.  *Id.* at 23 (referencing Ex. 1009, 2:36–50; Ex. 1002 ¶ 64; Ex. 1008, 2:5–6).  With respect to Morgan, Petitioner contends that it would have been obvious to add a strap to Forjot's cuff 1 based on Morgan's teaching of straps 142 for wrist support 136 and forearm support 138.  *Id.* at 24 (referencing Ex. 1002 ¶ 65; Ex. 1008, 2:67–68; Ex. 1010, 1:7–8).  With respect to Deckard, Petitioner contends that it would have been obvious to

IPR2020-00424
Patent 9,354,021 B2

add a strap to Forjot's cuff 1 based on Deckard's teaching of straps 13 and 14 used to secure mounting unit 10 to a user's forearm. *Id.* at 25 (referencing Ex. 1002 ¶ 67; Ex. 1008, 2:48–50; Ex. 1011, 1:58–60).

Petitioner reasons "a person skilled in the art would have been motivated to combine each of these references with *Forjot* because the combination involves using a known firearm accessory (a strap) in a known way (to secure a firearm support to a user's forearm) to yield predicable results (more secure support and better aim – both goals of *Forjot*)." Pet. 25–26 (referencing Ex. 1002 ¶ 68; *KSR Int'l Co.*, 550 U.S. at 416 (An invention must be more than "the predicable use of prior art elements according to their established functions.")).

Patent Owner argues that a person having ordinary skill in the art would not have been motivated to modify Forjot with the teachings of Baricos, Morgan, or Deckard. *See* Prelim. Resp. 49–52 (addressing Baricos), 52–55 (addressing Morgan), 56–59 (addressing Deckard). For each of the three grounds, Patent Owner argues that

> Because *Forjot* describes the invention as already providing the more secure attachment in an absolute and perfect way, there would be no motivation for a [person having ordinary skill in the art] to add a strap to the device, particularly when doing so would frustrate other useful benefits of the *Forjot* device (e.g., preventing injury to a hunter by providing for quick release and allowing for easy and quick engagement).

*Id.* at 49–50, 53, 56–57.

For each of the three grounds, Patent Owner also argues that Petitioner has failed to explain adequately why a person having ordinary skill in the art would not have modified each reference by incorporating Forjot's cuff into each of the reference's weapons systems. Prelim. Resp.

27

IPR2020-00424
Patent 9,354,021 B2

50–52, 53–55, 58–59; *see, e.g., id.* at 51 (depicting a modified version of Baricos's Figure 1, with Forjot's cuff replacing cradle 230 and strap 232).

Patent Owner also argues that a person having ordinary skill in the art would not combine the "spear gun teachings" of Forjot with the system of Baricos, because Forjot's goal is to improve aiming and Baricos uses a helmet-based heads-up display to aim. Prelim Resp. 50. With respect to Deckard, Patent Owner argues that Deckard's "sleeve concealment is inapplicable to spear hunting." *Id.* at 57–58.

We have considered Patent Owner's arguments, but do not find them sufficient, at this stage of the proceeding, to demonstrate a deficiency in Petitioner's position. First, as we discussed above in connection with our analysis of claim 1 under Ground 1, we are not persuaded, on the current record, that adding a strap to Forjot frustrates a requirement that Forjot's cuff be quick release. Second, with respect to Patent Owner's contentions that Petitioner did not explain why a person having ordinary skill in the art would not have modified the weapon systems of Baricos, Morgan, and Deckard to include Forjot's cuff, rather than modify Forjot by adding a strap, we do not understand the law governing obviousness to require such an analysis. Finally, to the extent that Patent Owner argues that Baricos and Deckard are non-analogous art, we determine that Patent Owner does not produce sufficient arguments and evidence, at this stage of the proceeding, to support such a position.

Accordingly, for the reasons provided above, including reasons made in connection with our analysis of claims 1, 3, and 5 under Ground 1, we determine, on the current record, that the information in the Petition demonstrates a reasonable likelihood Petitioner would prevail in its

28

IPR2020-00424
Patent 9,354,021 B2

contention that claims 1, 3, and 5 are unpatentable under 35 U.S.C. § 103(a) over Forjot and Baricos, Morgan, or Deckard.

*2.   Dependent claims 2 and 4*

Petitioner states "[t]he arguments regarding dependent claims 2–5, 7–9, and 11–14 apply to each of Grounds 1–4."  Pet. 21 n.7.  Petitioner additionally addresses claims 2 and 4 in its analysis of Ground 3.  *Id.* at 24.  We address Petitioner's positions and Patent Owner's arguments with respect to the dependent claims above, in connection with our analysis of Ground 1.

## III. DISCRETION UNDER § 325(D)

Patent Owner contends that we should exercise our discretion under 35 U.S.C. § 325(d) to deny the Petition.  Prelim. Resp. 12.  Patent Owner argues that

> [t]he main prior art relied upon by Petitioner, *Forjot*, is the functional equivalent to the main reference cited by the Office during prosecution of the '444 patent[9] (*Owen*[10]) because 1) each consists of a firearm with a cuff attached to the rear into which a user's forearm is placed and 2) each must be easily removable to prevent harm coming to the user.

*Id.* at 13.  Patent Owner argues that the Petition presents cumulative art to the art examined during prosecution of the application that matured into the '444 patent and that Petitioner does not identify any error by the examiner.

---

[9] As discussed above, the application that matured into the '021 patent is a continuation of a continuation of the application that matured into the '444 patent.  The application that matured into the '444 patent was examined by the same examiner as the application that matured into the '021 patent. *See, e.g.*, Ex. 1003, 65; Ex. 2006, 62.

[10] Owen, Jr., US 4,196,742, issued April 8, 1980 (Ex. 2007, "Owen").

IPR2020-00424
Patent 9,354,021 B2

*Id.* Patent Owner then goes through the six factors from our precedential decision in *Becton, Dickinson & Co. v. B. Braun Melsungen AG*, IPR2017-01586, Paper 8 (PTAB Dec. 15, 2017) (precedential as to § III.C.5, first paragraph) ("*Becton, Dickinson*"). *Id.* at 12–32.

Because we determine that Forjot was not considered by the examiner and Forjot is not cumulative to the prior art that was considered by the examiner, we do not exercise discretion under § 325(d) to deny institution. In our analysis, we address Patent Owner's contentions with respect to the *Becton, Dickinson* factors in light of our precedential decision in *Advanced Bionics, LLC v. MED-EL Elektromedizinische Geräte GmbH*, IPR2019-01469, Paper 6 (PTAB Feb. 13, 2020) ("*Advanced Bionics*").

   *A.   Applicable Framework*

Section 325(d) provides that, in determining whether to institute an *inter partes* review, "the Director may take into account whether, and reject the petition or request because, the same or substantially the same prior art or arguments previously were presented to the Office." 35 U.S.C. § 325(d) (2018). The Board uses a two-part framework in determining whether to exercise its discretion under § 325(d), specifically:

> (1) whether the same or substantially the same art previously was presented to the Office or whether the same or substantially the same arguments previously were presented to the Office; and (2) if either condition of the first part of the framework is satisfied, whether the petitioner has demonstrated that the Office erred in a manner material to the patentability of challenged claims.

*Advanced Bionics*, Paper 6 at 8.

In applying the two-part framework, we consider several non-exclusive factors from *Becton, Dickinson*: (a) the similarities and material differences between the asserted art and the prior art involved during

IPR2020-00424
Patent 9,354,021 B2

examination; (b) the cumulative nature of the asserted art and the prior art evaluated during examination; (c) the extent to which the asserted art was evaluated during examination, including whether the prior art was the basis for rejection; (d) the extent of the overlap between the arguments made during examination and the manner in which Petitioner relies on the prior art or Patent Owner distinguishes the prior art; (e) whether Petitioner has pointed out sufficiently how the examiner erred in its evaluation of the asserted prior art; and (f) the extent to which additional evidence and facts presented in the Petition warrant reconsideration of the prior art or arguments. *Becton, Dickinson*, Paper 8 at 17–18. If, after review of factors (a), (b), and (d), we determine that the same or substantially the same art or arguments previously were presented to the Office, then we review factors (c), (e), and (f), which relate to whether the petitioner demonstrates that the Office erred in a manner material to the patentability of the challenged claims. *Advanced Bionics*, Paper 6 at 10.

B. *Discussion*

With respect to factor (a), Patent Owner contends,

> *Forjot* and *Owen* are similar in structure and function, and *Forjot* is relied upon in the same manner as *Owen* was used by the [e]xaminer in forming two rejections during prosecution of the '444 Patent. The Examiner also considered *Owen* during the prosecution of the '021 Patent. Thus, *Forjot* is cumulative of *Owen*, which the Office considered.

Prelim. Resp. 14–15. Patent Owner argues that Petitioner asserts Forjot for the same claim limitations upon which the examiner relied on Owen, that is, all of the limitations except for the recited strap. *Id.* at 15. Patent Owner adds "*Forjot* does not add any structures or functions not already considered by the Office." *Id.* at 16.

IPR2020-00424
Patent 9,354,021 B2

Even if we agree with Patent Owner that Forjot and Owen disclose devices that are similar in *structure*, we do not agree that the two references disclose devices that are similar in *function*. Owen discloses "[a] ski-pole or crutch." Ex. 1005, code (57). An object of Owen's "invention is to provide a skier or the like with increased mobility and safety." Ex. 1005, 1:57–58. We reproduce Owen's Figures 1 and 13, below.



Figure 1 depicts "a side elevation of a ski-pole with an arm in cane and forearm mode," and Figure 13 depicts "a side elevation of a typical combination of a ski-pole with a gun." Ex. 1005, 2:18–19, 42–43. In either embodiment, the device functions as a ski-pole. As Owen discloses, the

> invention is intended for all types of skiing by able-bodied skiers, mainly various types of free style skiing, [so] the impacts on the tip of the ski-pole can be large and at any angle. The upward or axial force could easily exceed the strength of a healthy arm. However, since the elbow bends back and the yoke unlocks forward, a tip overload results in a safe toggling action from forearm mode to cane mode.

*Id.* at 1:66–2:5. As the patentee characterized Owen during prosecution of the application that matured into the '444 patent, "Owen is directed toward a ski-pole (crutch) with a forearm yoke that unlocks or swings forwardly away from a user's forearm when the tip of the ski-pole is snagged to prevent breaking the user's forearm." Ex. 2006, 147, 172; *see also id.* at 146–148, 171–173 (quoting Ex. 1005, 1:60–2:5).

In contrast, Forjot is directed to a gun and cuff used underwater for hunting. A user does not put weight on Forjot's assembly. A user of Forjot's device would not encounter the same risk if the end of its gun were snagged. This difference in *function* between Forjot and Owen is significant, as we discuss below in addressing factor (d), because the arguments made by the patentee to overcome Owen were based on Owen's function as a ski pole. *See* Ex. 2006, 146–148, 171–173.

With respect to Forjot and factor (b), Patent Owner repeats "*Forjot* (asserted) is cumulative of Owen, which was thoroughly considered in two separate rejections during the prosecution of the '444 Patent, with each being meritoriously overcome." Prelim. Resp. 26. We do not agree. As we discuss below, in connection with factor (d), one reference teaches a cuff used to stabilize an underwater weapon and the other teaches a ski-pole/gun combination, and these differences go directly to the patentee's arguments made to overcome Owen.

IPR2020-00424
Patent 9,354,021 B2

With respect to Forjot and factor (d), Patent Owner contends that, during prosecution, the patentee argued that the combination of Owen an Obitts[11] (relied by the examiner for disclosing a securement strap) would render Owen inoperable for its intended purpose.  Prelim. Resp. 28.  Patent Owner argues that, in the same way, the Petitioner's assertion of adding a strap to Forjot renders it inoperable for its intended purpose.  *Id.* at 29.  Patent Owner adds, "*Forjot* expressly confirms that 'quick release' is a feature generally desired by spear hunters."  *Id.* at 30.

As we discussed above in Section II.D.1.a, we do not agree with Patent Owner, at least on the current record, that Petitioner's proposed modification to add a strap to Forjot renders Forjot inoperable for its intended purpose.  The patentee overcame the rejection over Owen and Obitts by arguing that a person having ordinary skill in the art would not have modified Owen by adding a strap because such a modification "would prevent [Owen's] yoke from 'swing[ing] forward away from the forearm,' and render Owen inoperable for its intended purpose (e.g., preventing injury to a person's arm)."  Ex. 2006, 146–148, 171–173; *see* Prelim. Resp. 37–38.  As explained above, we determine that preventing injury to a person's arm is not the intended purpose of Forjot.  Further, as we explain above, on the current record, we preliminarily determine that Patent Owner misreads the "quick release" language in Forjot.  *Cf.* Prelim. Resp. 36–37 (relying on the "quick release" language in Forjot in arguing its intended purpose).

Importantly, the patentee successfully argued over Owen during prosecution of the application that matured into the '444 patent based on Owen functioning as a ski pole, where the pole had to support a user and a

---

[11] Obitts, US 6,279,591 B1, issued August 28, 2001 (Ex. 2008, "Obitts").

IPR2020-00424
Patent 9,354,021 B2

strap would prevent the yoke of Owen to swing free, thus possibly causing injury to a user.  Forjot is not a ski pole, and Forjot's gun does not support a user's weight.  The distinction between the functions of Owen and Forjot results in no overlap between the arguments with respect to Owen made during examination and the manner in which Petitioner relies on Forjot.

Because, in evaluating factors (a), (b), and (d), we determine that neither "the same or substantially the same art" nor "the same or substantially the same arguments previously were presented to the Office," we need not move to the second part of the *Advanced Bionics* framework. *Advanced Bionics*, Paper 6 at 8, 10.  Accordingly, we do not exercise discretion under § 325(d) to deny institution of trial.

## IV. CONCLUSION

After considering all the evidence and arguments presently before us, we determine Petitioner has established a reasonable likelihood that it would prevail with respect to at least one of the Challenged Claims.  Accordingly, we institute an *inter partes* review on all Challenged Claims and grounds.

## V.  ORDER

In consideration of the foregoing, it is hereby:

ORDERED that, pursuant to 35 U.S.C. § 314(a), an *inter partes* review is instituted as to claims 1–5 (the Challenged Claims) of the '021 patent; and

FURTHER ORDERED that pursuant to 35 U.S.C. § 314(c) and 37 C.F.R. § 42.4, notice is hereby given of the institution of a trial, which commences on the entry date of this Order.

IPR2020-00424
Patent 9,354,021 B2

FOR PETITIONER:

Christopher S. Schultz
Joseph M. Maraia
BURNS & LEVINSON LLP
cschultz@burnslev.com
jmaraia@burnslev.com


FOR PATENT OWNER:

Brittany J. Maxey-Fisher
William R. Brees (admitted *pro hac vice*)
MAXEY-FISHER, PLLC
bmaxeyfisher@maxeyfisher.com
wbrees@maxeyfisher.com